(No. 12075.—Judgment affirmed.)

The Illinois Central Railroad Company, Plaintiff in Error, *vs.* The Industrial Board of Illinois *et al.* Defendants in Error.

*Opinion filed June 20, 1918.*

1. Workmen's compensation—*when physical examination, required to qualify the employee, is waived by the employer.* Where the trainmaster and yardmaster in charge of the employment of workmen in a railroad company's yards engage a person who is already an employee of the company to run a motor car used in switching without requiring the employee to pass the physical examination required before employment, the examination and formal acceptance of the employee is waived by the railroad company, and the company will be liable in an action for the death of the employee while engaged in his work.

2. Same—*when burden is on a railroad company to show that employee was engaged in inter-State commerce.* Where a railroad company is engaged both in inter-State and intra-State commerce, to relieve itself of its obligation to pay compensation under the Illinois statute for the death of an employee engaged in switching it is incumbent upon the company to show that the work being done at the time of the injury was in inter-State commerce.

Writ of Error to the Circuit Court of Marion county; the Hon. James C. McBride, Judge, presiding.

Kagy & Vandervort, (W. W. Barr, of counsel,) for plaintiff in error.

Noleman & Smith, for defendant in error Lydia Webster.

Mr. Justice Cartwright delivered the opinion of the court:

In January, 1916, the plaintiff in error, the Illinois Central Railroad Company, had a yard which was called the "south yard" near its station at Centralia. It was a yard on which cars moved by gravity, being brought at the south end to what was known as the "hump" and permitted to run north into different classification tracks and switches. In order to control the cars by brakes switchmen rode them down from the hump to the north end, a distance of about 4000 feet, where they were turned into the several classification tracks and switches. Each switchman managed from two to five cars, and those who rode cars down were carried back to the hump by a gasoline motor for another trip. Claude F. Webster was operating the gasoline motor for carrying switchmen the night of January 8 and 9, 1916, and at about 4:15 A. M., as he was going north on track 17 to bring back to the hump three switchmen who had ridden cars down to the north end, he ran into a bad order car standing on the track and was killed. His mother, Lydia Webster, who was administratrix of his estate, claimed compensation for his death under the Workmen's Compensation act, and the plaintiff in error defended on the grounds, first, that Webster was not in its employ when killed; and second, that if in its employ he was engaged at the time in inter-State commerce. The Industrial Board awarded compensation, and on a writ of *certiorari* from the circuit court of Marion county the record was brought to that court and the decision of the board confirmed. The court

certified that the case was one proper to be reviewed by this court.

Claude F. Webster was employed in the freight office of the plaintiff in error in Centralia, and he had a brother, William Webster, who was employed in the south yard in the office of Frank E. Hatch, the trainmaster. William Webster asked the trainmaster if he would give his brother, Claude, a chance to run the motor, and Hatch said that he would, provided Claude could hold it. Hatch, the trainmaster, and Don Carlyle, the yardmaster, had charge of the employment of the men who ran the motor cars. The conversation with Hatch was in December, 1915, and the rule of the plaintiff in error on employment required a written application on a printed form containing various questions and it required a physical examination. Claude signed such an application for employment as motorman. On Thursday, January 6, 1916, Carlyle, the yardmaster, asked William Webster if his brother still wanted the position as motorman, and being told that he did, said that he should come down the next day. Claude reported at the south yard the next morning, and Bert Stewart, yard clerk, who was running the motor car as an extra man, was instructed by Carlyle to teach Claude to operate the motor car. Stewart and Claude rode and operated the motor car all day Friday on track 17 from the hump to the north end, Stewart giving Claude instructions as to operating it. On Saturday Carlyle asked William Webster if his brother was fixed up and ready to go to work. William said that he was ready and was told that Claude should show up for work that night. Accordingly on Saturday night Claude reported for work at about 7:15, and from that time until the accident in the morning he ran the car the greater part of the time. Stewart would get on the car and run it for two or three trips and then Claude would run it two or three trips alone until about eleven o'clock, after which time Claude would run the car about three-quarters of an hour, taking

eight or ten minutes for a trip the full length of the yard, and then Stewart would get on the car and make two or three trips with him. The last time Stewart got on the car was about 3:15 or 3:30 in the morning, when he made three trips and left the car in charge of Claude. After that Claude operated the car until the accident at 4:15. There had been no physical examination as required by the written application and no acceptance had been endorsed or written upon it. William Webster showed the application to W. R. Clements, who was employed in the office of the trainmaster, Hatch, and said that it was all ready but the physical examination, and Clements said that he did not know that that would make any difference, because he understood they were going to transfer him from one department to another.

The basis of the claim that Claude F. Webster was not in the employ of the plaintiff in error while running the motor car for it is that there had been no physical examination or acceptance of the application by the proper authority and that he was only learning to operate the car. The claim that he was only learning to operate the car is not in accord with the facts. The operation of the car was entrusted to him most of the time during the night in which he was killed without anyone with him, and necessarily Stewart, who had been directed to instruct him, considered him qualified to run the car and that further instruction was not necessary. Carlyle, the yardmaster, had asked William Webster if his brother was fixed up and ready to go to work and said he should show up for work that night. The assistant of Hatch, the trainmaster, who with Carlyle had charge of the employment of motormen, expressed the opinion that a compliance with the written application was not essential because Webster was to be transferred from one department to another. In any view of that matter, the examination and formal acceptance could have been waived

by the plaintiff in error, and were waived by its representatives in charge of the work by setting Webster to work without it.

The second ground of defense was that Webster was engaged in inter-State commerce, and that question is to be determined by the nature of the work being done at the time of the injury. (*Chicago, Rock Island and Pacific Railway Co. v. Industrial Board*, 273 Ill. 528.) The plaintiff in error was engaged both in inter-State and intra-State commerce, and to relieve itself of its obligation to provide and pay compensation under the Workmen's Compensation act it was incumbent upon it to show the fact that the work being done at the time of the injury was in inter-State commerce. The operation of the motor car for bringing switchmen back from the north end of the south yard to the hump was purely local in the breaking up of trains, which might contain cars for either class of commerce. At the time of the accident Webster was going to the north end to bring back to the hump three switchmen who had ridden down five cars loaded with company coal consigned from DuQuoin to a point in this State, but being company coal the cars were subject to re-consignment and could be sent anywhere to supply the needs of the plaintiff in error. The only cars in the train shown to have been destined for any point out of the State were five cars of company coal destined for Dubuque, Iowa. Webster was not handling or engaged in any way in the movement of cars shown to have been employed at the time in inter-State commerce, and there was no showing that the nature of the work he was doing at the time of the injury was any part of inter-State commerce.

The judgment is affirmed.      *Judgment affirmed.*