(No. 12862.—Judgment modified and affirmed.)

The Chicago and Alton Railroad Company, Plaintiff in Error, vs. The Industrial Commission et al.—(Frank B. Sanders, Admr. Defendant in Error.)

*Opinion filed December 17, 1919.*

1. WORKMEN'S COMPENSATION—*employee of inter-State carrier is not necessarily engaged in inter-State commerce.* Not every employee of an inter-State carrier is engaged. in inter-State commerce, but to be so employed the work of the employee must constitute a substantial part of the inter-State commerce in which the carrier is engaged.

2. SAME—*what determines whether employee was engaged in inter-State commerce at time of injury.* For an employee of a railroad company to have been engaged in inter-State commerce when injured he must have been engaged in inter-State transportation at the time of the injury or in work so closely related to it as to be practically a part of it, and the mere expectation that he would presently be called upon to perform a task in inter-State commerce is not sufficient.

3. SAME—*when an employee is not engaged in inter-State commerce.* An employee of a railroad company whose general duties are to patrol the yards and watch for thieves, and who is shot while attempting to halt thieves who were carrying off coal from the yards, is not engaged in inter-State commerce at the time of his injury, although he had been sent to that point in the yard to guard an inter-State train which was starting to pull out but which had not reached the point where he was stationed.

WRIT OF ERROR to the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding.

C. E. POPE, and H. F. DRIEMEYER, (SILAS H. STRAWN, of counsel,) for plaintiff in error.

TERRY, GUELTIG & POWELL, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

The circuit court of Madison county confirmed an award of the Industrial Commission in favor of the administrator of Joseph P. Lambert, deceased, and certified it was a case proper to be reviewed by this court.

Lambert died from the effects of gunshot wounds received August 21, 1917. He left surviving him a widow but no children. The only question presented for our decision is whether deceased at the time of his injury was engaged in inter-State commerce. If he was, any liability would be exclusively under the Federal Employers' Liability act; if he was not, it is not disputed that our Workmen's Compensation act applies.

The case was heard by the arbitrator, the Industrial Commission and the circuit court on an agreed statement of facts, the substance of which is that deceased was at the time of his injury, and had been for more than a year prior thereto, employed by the Chicago and Alton Railroad Company in its yards at Venice, Brooklyn and East St. Louis, known as the East St. Louis terminals, in the State of Illinois. His duties were to guard the property of the company and all property being transported by it as a common carrier, to prevent theft and to apprehend persons stealing or suspected of stealing property. Prior to deceased's injury merchandise had been stolen from cars in trains Nos. 94 and 98 while in the yards. These were both inter-State trains. T. J. Reardon was deceased's immediate superior. Deceased reported for duty at six o'clock P. M. August 21, and he and Reardon went together to the yards where train No. 98 had been made up and was standing. Their purpose was to guard it, and the merchandise with which it was loaded, while it stood in the yards and as it was passing out of the East St. Louis terminals. About 7:30 P. M. the train was ready to depart. Reardon boarded it about the middle and directed deceased to go on ahead of it and hide himself behind a pile of ties on the east side of the tracks of the Chicago and Alton railroad and between them and the tracks of the Wabash Railroad Company. The headlight of train No. 98 was plainly visible at this point. A few days previous the train had been broken into and a case of shoes dropped out of the car about the point where

Lambert was sent to secrete himself. At the same time it was also deceased's duty to apprehend any person stealing any property in the yards who might come under his observation or whom he might suspect of stealing. After deceased had taken his position and the train had started, but before it reached the place where he was hiding, he saw two men coming toward him from the Wabash right of way carrying sacks filled with some articles to him then unknown. He left his hiding place, started toward them and called to them to halt, whereupon they opened fire on him and shot him and escaped. It was subsequently ascertained that the sacks the men were carrying contained coal. A number of cars loaded with coal were standing on near by tracks. A few minutes after deceased was shot train No. 98 arrived at that point and he was placed upon the engine and taken to a hospital at Granite City, Illinois, where he died November 20, 1917, from his wounds. Deceased left him surviving a widow but no children, and Frank B. Sanders was duly appointed and qualified as administrator. Plaintiff in error provided medical and hospital services for deceased to the amount of more than $400. It was notified of the injury within thirty days and claim was made for compensation within six months. Deceased's wages for the year preceding his injury were $840.

It is the contention of plaintiff in error that deceased was engaged in inter-State commerce at the time of his injury; that the Federal Employers' Liability act therefore provided the exclusive remedy; that there was no liability under the Workmen's Compensation act, and that the circuit court erred in not so holding.

Some of the duties of the deceased had no connection with inter-State commerce or its movement and transportation. His duties were to protect his employer's yards and property from thieves and to catch thieves found in the yards. As the stipulation shows, the train he was sent ahead of had not reached him when he was shot. Only its

headlight was visible to him, and it does not appear that the men who shot him had any designs upon that train. They were stealing coal and had their sacks filled when discovered. Not every employee of an inter-State carrier is engaged in inter-State commerce. The work of the employee must constitute a real and substantial part of the inter-State commerce in which the carrier is engaged. (*Illinois Central Railroad Co.* v. *Behrens,* 233 U. S. 473; *Pederson* v. *Delaware, Lackawanna and Western Railroad Co.* 229 id. 146; *Chicago, Rock Island and Pacific Railway Co.* v. *Industrial Board,* 273 Ill. 528; *Dickinson* v. *Industrial Board,* 280 id. 342.) The true test is that at the time of the injury the employee was engaged in inter-State transportation or in work so closely related to it as to be practically a part of it. (*Shanks* v. *Delaware, Lackawanna and Western Railroad Co.* 239 U. S. 556.) The mere expectation that the employee would presently be called upon to perform a task in inter-State commerce is not sufficient to bring the case within the act. (*Erie Railroad Co.* v. *Welsh,* 242 U. S. 303; *Illinois Central Railroad Co.* v. *Behrens, supra.*) "When the question arises whether the Federal act applies, the burden is upon the person asserting it to show that the facts at the time of the happening abated the original and primary sovereignty of the State and permitted the exceptional and limited power of the Federal government to attach." (18 R. C. L. 856.) This is the rule adopted and announced in *Illinois Central Railroad Co.* v. *Industrial Board,* 284 Ill. 267, and *Chicago, Rock Island and Pacific Railway Co.* v. *Industrial Board, supra.* Under the stipulation of facts and the decisions referred to, deceased was not at the time of his injury engaged in inter-State commerce and the Workmen's Compensation act applied.

The award made by the Industrial Commission for compensation was at the rate of $8.08 per week for 415 weeks and $6.80 for one week. The judgment of the circuit court finds and recites the amount due at the time the cause was

heard in that court and orders execution therefor, and further orders that execution issue from week to week for the monthly installments.  The authority of the circuit court reviewing the award on *certiorari* was limited to confirming it or setting it aside.  It is stipulated between counsel for the respective parties that the part of the judgment referred to was entered by inadvertence, through misunderstanding of counsel on both sides, and that such part of the judgment as directs payment of the award and orders executions may be disregarded by this court, and if this court holds deceased was not at the time of his injury engaged in inter-State commerce and that the circuit court properly affirmed the award, this court may modify the judgment by striking out that part of it referred to without reversing and remanding the cause.  The judgment will be so modified, and as modified it will be affirmed.

*Judgment modified and affirmed.*

---

(No. 12841.—Judgment reversed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* TIM JONES, Plaintiff in Error.

*Opinion filed December 17, 1919.*