---

(No. 12888.—Judgment modified and affirmed.)
THE GRAND TRUNK WESTERN RAILWAY COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (MARIE HAMPLE *et al.* Defendants in Error.)

*Opinion filed December 17, 1919—Rehearing denied Feb. 4, 1920.*

1. WORKMEN'S COMPENSATION—*test as to whether employee was engaged in interstate commerce.* Where the duties of an employee of an interstate carrier require him to engage in both intrastate and interstate commerce, the test for determining whether liability for his injury is under the Federal Employer's Liability act or the State Compensation act is whether at the time of his injury he was engaged in interstate transportation or in work so closely related to it as to be practically a part of it.

2. SAME—*what does not bring injury within Federal Employer's Liability act.* The mere expectation that an employee who receives an injury would presently be called upon to perform a task in interstate commerce does not bring the injury within the Federal Employer's Liability act.

3. SAME—*when employer must prove that injured employee was engaged in interstate transportation.* To relieve itself of liability under the State Compensation act for the unwitnessed death of an employee whose duties were not exclusively confined to interstate commerce, the employer must show that the work the employee was doing at the time of his death was interstate commerce.

4. CONSTITUTIONAL LAW—*presumptions are in favor of validity of statute.* All presumptions are in favor of the validity of a statute and all doubt is to be resolved in favor of the law, and neither the motive nor wisdom of the General Assembly is open to question by the courts.

5. SAME—*legislature has power to make Compensation act applicable without election by employer.* It is within the power of the legislature to make the Compensation act applicable to all the employments therein designated as extra-hazardous without election by the employers to come under the act, and its action in so doing does not deprive employers of their property without due process of law.

6. SAME—*Compensation act does not deny constitutional right to jury trial.* The right to a trial by jury is incidental to the right of action, and as the Compensation act takes away the previously existing right of action and the grounds of defense and merges the two in a statutory indemnity fixed and certain, the act does not deny the constitutional right to trial by jury.

7. SAME—*Compensation act is not invalid in creating liability without fault.* It was within the power of the legislature, in the exercise of the police power of the State, to provide in the Compensation act for a liability on the part of employers engaged in extra-hazardous occupations without regard to fault on the part of the employer or negligence on the part of the employee.

8. SAME—*Compensation act does not delegate judicial powers to Industrial Commission.* The Compensation act is practically automatic in its working, and the powers thereby delegated to the Industrial Commission are administrative, merely, and not judicial.

9. SAME—*restriction upon freedom of contract imposed by the Compensation act is authorized by police power.* The restriction upon the freedom of contract imposed by the Compensation act is authorized by the police power of the State, and the act is not unconstitutional in that respect.

10. PRACTICE—*judgment confirming award but erroneously ordering execution may be modified.* A judgment of the circuit court confirming an award by the Industrial Commission but erroneously ordering execution may be modified in the Supreme Court by striking out such erroneous provision and may be affirmed as modified.

DUNCAN, J., dissenting.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

KRETZINGER, KRETZINGER & SMITH, (L. L. SMITH, of counsel,) for plaintiff in error.

JOHN L. HOPKINS, and A. G. ABBOTT, for defendants in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This writ of error is prosecuted to review the judgment of the circuit court of Cook county confirming the decision of the Industrial Commission awarding compensation for the death of Anthony Hample, the circuit court having certified that the cause is one proper to be reviewed by this court.

The errors specified are based upon the contention that the liability, if any, of plaintiff in error for the death of Anthony Hample is defined and limited exclusively by the provisions of the Federal Employers' Liability act, and that the Illinois Workmen's Compensation act as amended and in force July 1, 1917, is unconstitutional in so far as it applies automatically and without election to all employers and their employees engaged in the extra-hazardous business of carriage by land. (Laws of 1917, p. 507.) The first point assumes that the deceased was employed in interstate commerce at the time he received the fatal injuries. He was employed as a watchman and train rider, charged with the duty of guarding the property of plaintiff in error in its railroad yards at Hayford, Illinois, and with the duty of riding its trains to guard merchandise carried by it. The commission found that he was on duty at the time and at a place not outside of the limits prescribed for the performance of his duties; that he was not engaged in interstate commerce, and that the injury received by him and resulting in his death was an accidental injury arising out of and in the course of his employment.

The deceased was found dead about four o'clock in the morning of August 18, 1917. The body was lying four or five feet off the east-bound main track of plaintiff in error and a considerable distance south of the Belt Line tracks, which crossed the tracks of plaintiff in error approximately at right angles. The body was lying on its back, with the head away from the track and with the arms stretched above

the head. His gun, fully loaded, was lying on the ground a few inches from his right hand and his flashlight was in his coat pocket. There was a bullet wound through the chest, which caused a fatal hemorrhage. There was another bullet wound which passed through the arm and body at the level of the sixth rib. Both bullets took a downward course. There were no other marks, scratches or abrasions on the body. There were no eye-witnesses to the shooting of deceased, and just what he was doing at the time he was shot can be determined only by the facts and circumstances leading up to the time when he was last seen alive. Deceased had no regular hours of employment, but his usual hours were from 6:00 o'clock P. M. to 6:00 o'clock A. M. Until about 11:30 o'clock P. M. his duties were to watch and to guard the property of the plaintiff in error in its yards at Hayford. About this time train No. 92 was due to leave the yards for Michigan points, and it was the duty of deceased to ride this train to Valparaiso, Indiana. He was a special officer sworn in, with authority to make arrests. There were several side-tracks near the point where the body was found, and upon these side-tracks were some cars loaded with merchandise and also some "bad order" cars. It was the duty of deceased to arrest anyone stealing journal brasses or merchandise from these cars and to otherwise protect his employer's property from trespassers. Some auto tires stolen from plaintiff in error had been discovered in the weeds and grass, and the officers of plaintiff in error had left these tires as a decoy, to see if the thieves would return for them. It is the contention of defendants in error that the deceased was shot by thieves returning for these tires or coming to steal other property of plaintiff in error. It is the contention of plaintiff in error that deceased had boarded interstate train No. 92, which was due to leave the yards about 11:30 o'clock and which it was the duty of deceased to ride to Valparaiso, Indiana, and that he was shot by someone on this train. The train crew all

testified that they did not see deceased board the train or anywhere in the vicinity of the train. The train was required to stop north of the Belt Line crossing, and there was the place where the deceased was directed to board the train. His body was found south of the Belt Line crossing. Whether he was shot while guarding this interstate train or while guarding the property of plaintiff in error stored in its yards was a question of fact to be determined from all the facts and circumstances in the record.

Some of the duties of the deceased had no connection with interstate commerce or its movement and transportation. Not every employee of an interstate carrier is engaged in interstate commerce. To be so engaged the work of the employee must constitute a real and substantial part of the interstate commerce in which the carrier is engaged. The true test is that at the time of the injury the employee was engaged in interstate transportation or in work so closely related to it as to be practically a part of it. (*Chicago, Rock Island and Pacific Railway Co.* v. *Industrial Board,* 273 Ill. 528; *Chicago and Alton Railroad Co.* v. *Industrial Com.* 288 id. 603.) The mere expectation that the employee would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the act. (*Chicago and Alton Railroad Co.* v. *Industrial Com.* 290 Ill. 599.) The plaintiff in error was engaged in both interstate and intrastate commerce, and to relieve itself of its obligation to provide and pay compensation under the Workmen's Compensation act it was incumbent upon it to show the fact that the work being done at the time of the injury was interstate commerce. (*Illinois Central Railroad Co.* v. *Industrial Board,* 284 Ill. 267.) This is one of those cases where it is difficult, if not impossible, to determine just what deceased was doing when he was killed, and therefore it is a problem to determine under which act to proceed. There is evidence in the record to justify either conclusion. The injured employee or his per-

sonal representative must determine whether to proceed un-
der the State Compensation law or the Federal Employers'
Liability act. Here the surviving dependents chose to pro-
ceed under the State statute, and the defense is that they
should have proceeded under the Federal statute. If the
choice had been to proceed under the Federal statute the
defense would in all probability have been the State statute.
In such case we will not substitute our judgment for that
of the Industrial Commission, when there is any evidence
in the record which justifies its finding.

We turn now to the constitutional question. When it
is alleged that an act of the General Assembly violates con-
stitutional restrictions imposed by the people upon the ex-
ercise of legislative power the rules by which the court is
to be guided are well settled. The General Assembly is
without restriction or limit in the exercise of legislative
power, except as bounds are set up or restrictions imposed
by the constitution. All presumptions are in favor of the
validity of a statute, and in all doubtful cases the doubt is
resolved in favor of the law. Neither the motive nor the
wisdom of the General Assembly is ever questioned, but
where it is clear that a limitation or restriction imposed by
the people in the fundamental law has been violated or dis-
regarded by the General Assembly it is the plain duty of
the court to so declare, and that duty can neither be evaded
nor neglected, no matter how desirable or beneficial the at-
tempted legislation may be. *Sutter* v. *People's Gas Light
Co.* 284 Ill. 634.

Section 3 of the Workmen's Compensation act provides
that the act shall apply automatically and without election
to all employers and their employees engaged in any of
the enterprises or businesses which are declared by the act
to be extra-hazardous, and in this class are placed carriers
by land. It is contended that the act is unconstitutional
because it creates a liability without fault of the employer,
takes the property of employers brought automatically with-

in its provisions without due process of law, denies to employers the right of trial by jury, delegates judicial powers to persons not authorized by the constitution to perform judicial acts, and restricts the free right of contract guaranteed by the constitution.

The scheme of the act is so wide a departure from common law standards respecting responsibility of employer to employee that doubts naturally arise respecting its constitutional validity.   In support of this type of legislation it is said in *New York Central Railroad Co.* v. *White,* 243 U. S. 188, (37 Sup. Ct. 247,) that the whole common law doctrine of employers' liability for negligence, with its defenses of contributory negligence, fellow-servants' negligence and assumption of risk, is based upon fiction and is inapplicable to modern conditions of employment; that in the highly organized and hazardous industries of the present day the causes of accident are often so obscure and complex that in a material proportion of cases it is impossible by any method correctly to ascertain the facts necessary to form an accurate judgment, and in a still larger proportion the expense and delay required for such ascertainment amount, in effect, to a defeat of justice; that under the former system the injured workman was left to bear the greater part of industrial accident loss, which because of his limited income he was unable to sustain, so that he and those dependent upon him were overcome by poverty and frequently became a burden upon public or private charity; and that litigation was unduly costly and tedious, encouraging corrupt practices and arousing antagonisms between employers and employees.

The entire matter of liability for death caused by wrongful act, both within and without the relation of employer and employee, is a modern statutory innovation.   The legislature may modify this right of action, extend it or limit it, or even abolish it altogether.   No person has a vested interest in any rule of law, entitling him to insist that it shall remain unchanged for his benefit.   (*Middleton* v.

*Texas Power and Light Co.* (U. S.) 39 Sup. Ct. 227; *Arizona Copper Co.* v. *Hammer,* (U. S.) 39 Sup. Ct. 553; *Adams* v. *Iten Biscuit Co.* (Okla.) 162 Pac. 938; *Wall* v. *Chesapeake and Ohio Railway Co.* 290 Ill. 227.) The courts have repeatedly upheld the authority of the legislature to establish departures from the common law rules affecting the employer's liability for personal injuries to the employee. (*Deibeikis* v. *Link-Belt Co.* 261 Ill. 454.) The statute under consideration simply sets aside one body of rules to establish another system in its place. The employee or his personal representative is no longer able to recover as much as before in case of an injury growing out of the employer's negligence, but he is entitled to moderate compensation in all cases of injury, and has a certain and speedy remedy without the difficulty and expense of establishing negligence or proving the amount of the damages. Instead of assuming the entire consequences of all ordinary risks of the occupation, he assumes the consequences, in excess of the scheduled compensation, of risks, ordinary and extraordinary. On the other hand, the employer is left without defense respecting the question of fault, but he is at the same time assured that the recovery is limited and that it goes directly to the relief of the designated beneficiary, and just as the employee's assumption of ordinary risks at common law presumably was taken into account in fixing the rate of wages, so the fixed responsibility of the employer and the modified assumption of risk by the employee under the new system presumably will be reflected in the wage scale. The act evidently is intended as a just settlement of a difficult problem affecting one of the most important of social relations, and it is to be judged in its entirety.

Much emphasis is laid upon the criticism that the act creates liability without fault. It must be remembered that the modern tendency is to compensate for loss of earning power. Such a loss stands to the employee as his capital in trade. It is a loss arising out of the business in which

he is employed, and, however it may be charged up, is an expense of the operation just as truly as the cost of repairing broken machinery or any other expense that ordinarily is paid by the employer.    On grounds of natural justice the business should bear this charge.    The State by this kind of legislation relieves the employer from responsibility for damages measured by common law standards and payable in cases where he or those for whose conduct he is answerable are found to be at fault.    It is not unreasonable for the State, in exchange, to require the employer to contribute a reasonable amount, according to a reasonable and definite scale, by way of compensation for the loss of earning power incurred in the common enterprise, irrespective of the question of negligence, instead of leaving the entire loss to rest where it may chance to fall,—upon the injured employee or his dependents and indirectly upon the State.    The test of the validity of a law which creates liability without fault and under which the property of one is taken without compensation to pay the obligations of another, is not whether it does objectionable things, but whether there is any reasonable ground to believe that the public safety, health or general welfare is promoted thereby.    The police power, under which such reasonable regulations are made, is a power inherent in every sovereignty; a power to govern men and things; a power to which the possession and enjoyment of rights are subject, and under which the legislature exercises supervision over matters affecting the common weal, and enforces the observance by each member of society of his duty to others and the community at large, and prescribes regulations promoting the health, peace, morals, education and good order of the people, and legislates so as to increase the industries of the State, develop its resources and add to its welfare and prosperity.    (*State* v. *Clausen,* 65 Wash. 156;  117 Pac. 1101;  *Jensen* v. *Southern Pacific Co.* 215 N. Y. 514;  109 N. E. 600;  *New York Central Railroad Co.* v. *White, supra; Arizona Copper Co.* v. *Hammer, su-*

*pra.*) .The legislature has the power to bring these extra-hazardous employments under the act without election, and the act is not subject to the objection that the employer is deprived of his property without due process of law.

Our constitution provides that the right of trial by jury as heretofore enjoyed shall remain inviolate, but it guarantees that right only to those causes of action recognized by law. The act here in question takes away the cause of action on the one hand and the ground of defense on the other and merges both in a statutory indemnity fixed and certain. If the power to do away with a cause of action in any case exists at all in the exercise of the police power of the State, then the right of trial by jury is therefore no longer involved in such cases. The right of jury trial being incidental to the right of action, to destroy the latter is ·to leave the former nothing upon which to operate. *State* v. *Clausen, supra;. Adams* v. *Iten Biscuit Co. supra; Moody* v. *Found,* 208 Ill. 78; *Cunningham* v. *Northwestern Improvement Co.* 44 Mont. 180; 119 Pac. 554.

The committee of arbitration and the Industrial Commission are administrative bodies and have no judicial functions. (*Savoy Hotel Co.* v. *Industrial Board,* 279 Ill. 329.) The contention that the act delegates judicial powers to the committee or the commission cannot be sustained. The act is almost automatic in practical working. The amounts to be paid are easy of computation and the person or persons to whom ·they shall be paid are fixed and certain. · The commission has power to formulate rules and regulations not inconsistent with the provisions of the act and to determine controversies which arise in the administration of the act. If we are correct in our former conclusions that the act affords due process of law and the right of trial by jury has not been violated, then ·it seems clear that any controversy which may arise concerning the mere administration of the act may be decided in such summary manner as the legislature shall prescribe. *Cunningham* v. *Northwestern*

*Improvement Co. supra; Hunter* v. *Colfast Consolidated Coal Co.* (Iowa) 154 N. W. 1037.

It is also urged that the statute strikes at the fundamentals of the constitutional freedom of contract, and our attention is called to declarations by this court in *Ritchie* v. *People,* 155 Ill. 98, *Mathews* v. *People,* 202 id. 389, and *Kellyville Coal Co.* v. *Harrier,* 207 id. 624. These declarations are qualified in *Ritchie & Co.* v. *Wayman,* 244 Ill. 509. We recognize that the legislation under review does measurably limit the freedom of employer and employee to agree respecting the terms of employment, and that it can not be supported except on the ground that it is a reasonable exercise of the police power of the State. In our opinion it is fairly supportable on that ground. The subject matter in respect of which freedom of contract is restricted is the matter of compensation for human life lost or disability incurred in the course of hazardous employment, and the public has a direct interest in this as affecting the common welfare. The whole is no greater than the sum of all its parts, and when the individual health, safety and welfare are sacrificed or neglected the State must suffer. The authority of the State to prohibit contracts made in derogation of a lawfully established policy of the State respecting compensation for accidental death or disabling personal injury is perfectly clear. (*New York Central Railroad Co.* v. *White, supra.*) The act is not subject to the constitutional objections urged against it and the court properly confirmed the decision of the Industrial Commission.

The award made by the Industrial Commission for compensation was at the rate of $32.50 a month for ninety-six months. The judgment of the circuit court finds and recites the amount due at the time the cause was heard in that court and orders execution therefor, and further orders that execution issue from month to month for future installments as they become due. Defendants in error confess that the authority of the circuit court reviewing the award on *cer-*

*tiorari* was limited to confirming or setting aside the decision of the commission. They urge that the circuit court had authority under the act to modify its judgment on suggestion and that it was not necessary to bring the case to this court to have this error corrected, and ask that if this court finds that the circuit court properly confirmed the award, this court modify the judgment by striking out that part of it ordering execution without reversing and remanding the cause.

The judgment will be so modified and as modified it will be affirmed.        *Judgment modified and affirmed.*

Mr. JUSTICE DUNCAN, dissenting.