Foreman Trust & Savings Bank, Administrator of the Estate of Kazimir Proscievich, Deceased, Appellee, v. Grand Trunk Western Railway Company, Appellant.

Gen. No. 31,097.

1. MASTER AND SERVANT—*exclusion of other remedies where Federal Employers' Liability Act applicable.* Where the Federal Employers' Liability Act applies, all other remedies are excluded.

2. MASTER AND SERVANT—*question as to engagement of employee in interstate commerce as one for jury.* The question whether an employee of an interstate carrier by railroad was, at the time of his injury, engaged in interstate commerce, is one for the jury.

3. STATUTES—*controlling effect of Federal construction of Federal statute.* The construction placed upon a Federal statute by the Federal courts is controlling upon the State courts.

4. MASTER AND SERVANT—*test as to whether employee of carrier by railroad engaged in interstate commerce when injured, under Federal Employers' Liability Act.* The test as to whether an employee of a carrier was engaged in interstate commerce at the time of his injury, so as to render applicable the Federal Employers' Liability Act, is, Was the employee, at such time, engaged in interstate transportation, or in work so closely related thereto as to be practically a part of it?

5. MASTER AND SERVANT—*burden of proof in action under Federal Employers' Liability Act as to engagement of injured employee in interstate commerce.* In an action for injuries to an employee of a carrier by railroad, the burden of proof that at the time of such injury he was engaged in interstate commerce, so renders applicable the Federal Employers' Liability Act, rests upon the plaintiff.

6. MASTER AND SERVANT—*when employee not engaged in interstate commerce.* An employee of a railroad, injured while performing services in the course of his employment as light car inspector, was not, at the time of such injury, engaged in interstate commerce within the meaning of the Federal Employers' Liability Act, where his injury occurred while he was making temporary repairs upon a car of a foreign railroad while it was standing upon a sidetrack in the employer's yards whereon it had been placed after an interstate shipment had been unloaded therefrom because the defective condition of the car rendered its further movement unsafe, and where following the making of such temporary repairs

Foreman T. & S. Bk. v. G. T. W. Ry. Co., 242 Ill. App. 428.

the car was hauled to another part of the yards by a train carrying both interstate and intrastate freight, and there was no evidence as to the intention of the carrier with respect to the further use of the car after such interstate shipment was unloaded therefrom.

JOHNSTON, J., dissenting.

Appeal by defendant from the Superior Court of Cook county; the Hon. JAMES S. BALDWIN, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1926. Reversed and remanded. Opinion filed November 29, 1926. Rehearing denied December 13, 1926.

KRETZINGER, KRETZINGER & SMITH, for appellant.

MORSE IVES, H. H. PATTERSON and C. C. BODENSTAB, for appellee; H. H. PATTERSON, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

In an action brought under the Federal Employers' Liability Act, Barnes Federal Code, § 8069 [Cahill's St. ch. 114, ¶¶ 321-329], and on trial by a jury, the plaintiff administrator had a verdict for $18,000, on which the court, overruling motions for a new trial and in arrest, entered judgment.

At the close of plaintiff's evidence and again at the close of all the evidence, there were requests by the defendant for an instructed verdict in its favor, which motions were denied, and it is argued here that the jury should have been so instructed and that the plaintiff cannot recover because its intestate, at the time when he received the injuries which resulted in his death, was not employed in interstate commerce. After a careful consideration of the evidence we are of the opinion that this is the controlling question in the case.

For the most part the facts bearing upon that issue were placed in the record by stipulation, and the material facts are, we think, undisputed and as follows:

The defendant was and is a common carrier engaged in intrastate and interstate commerce. The accident, which resulted in the death of plaintiff's intestate, occurred on April 24, 1924, on one of the tracks of defendant's yard near Twelfth Street in Chicago. The intestate was at that time employed by defendant and was performing services for it as a light car inspector. At the particular time that he received his injury he was in the course of his employment making repairs upon an empty freight car No. 2363, which belonged to the Chicago River and Indiana Railroad. The empty car in question was then standing on what was known as the long or ''C'' track of defendant's yard. The injury, which resulted in the death of the intestate, was caused by a train of cars moved backward by an engine under the control of defendant's employees upon this track and against certain other cars, to which said car No. 2363 was at that time coupled. This car No. 2363, upon which the intestate was working, had on that day been used to bring an interstate shipment of meat from the Union Stock Yards of Chicago, and this shipment, after its arrival, was unloaded at defendant's freight house at Twelfth Street. The meat was later reloaded and continued its interstate journey, but not in this car No. 2363.

In the course of his employment the deceased inspected car No. 2363 at the freight house and put a bad order card on it. There was evidence, to which defendant objected, tending to show that the deceased then told the conductor that he would have to do some more work on the car and asked the conductor where he was going to put it, to which the conductor replied that he was going to put the car on the long track, and the empty car was then placed upon said track, where the deceased commenced to make the repairs and where, while making the same, he was injured.

On the same day this car No. 2363 was moved by the defendant from the long track and hauled out to

Foreman T. & S. Bk. v. G. T. W. Ry. Co., 242 Ill. App. 428.

what was known as the Elsdon yards, belonging to defendant. It was hauled out by what was known as the midnight transfer train, and this train carried freight and merchandise which were in transportation by defendant to points outside the State of Illinois. That train contained both interstate and intrastate cars, and it was being made up on the long track at the time the accident occurred, at about 5.45 p. m. There is no evidence tending to show whether the Chicago River and Indiana Railroad was doing interstate or intrastate business.

There is evidence in the record tending to show that car No. 2363, at the time of its arrival, was in such condition that it could not be safely removed in a train. The iron strap that held the draw bar and coupler up was loose so as to drop down about three inches, and the brake beam was broken so that it was necessary to wire it up. There were from Twelfth Street to the Elsdon yards tunnels subways and crossovers which, the evidence tended to show, would make the movement of the car unsafe unless it was repaired. There were no repair tracks at Twelfth Street, and only one car repairer was on duty there at a time. The custom was to make light repairs only at Twelfth Street so that the cars might be moved to the Elsdon yards at Fifty-first Street, where the general repair work was done. Car No. 2363 was dropped off at Elsdon yards, and there is no further evidence in the record indicating its next movement, nor is there any evidence in the record tending to show what the intention of the defendant company was with reference to its use after the interstate shipment of meat was unloaded at defendant's freight house on Twelfth Street.

As in all cases where rules of law prescribed by one sovereign power obtain within the territorial jurisdiction of another sovereignty and where the rule operating on the subject matter within the one jurisdic-

tion is exclusive of the other, so in the construction of the Federal Employers' Liability Act it often becomes a difficult question to determine when the statute is and when it is not applicable. The confusion results from the inherent difficulty of determining the rule that should be applied under different circumstances. The constitutional power to enact such legislation as the Federal Employers' Liability Act is derived by the National Congress from the interstate commerce clause of the Constitution of the United States, and a law of Congress which would assume to impose the obligations of that statute upon carriers engaged in a purely intrastate commerce, would be invalid. *Mondou v. New York, N. H. & H. R. Co.,* 223 U. S. 1. The act, however, where it does apply is exclusive of other remedies. *Chicago, R. I. & P. Ry. Co. v. Schendel,* 270 U. S. 611, 70 L. Ed. 757, 46 Sup. Ct. 420, and the question of whether a plaintiff's intestate was engaged in interstate commerce at the time of receiving injuries resulting in his death is a question for the jury. *Brown v. Illinois Terminal Co.,* 319 Ill. 326; *Pennsylvania Co. v. Donat,* 239 U. S. 50; *North Carolina R. Co. v. Zachary,* 232 U. S. 248. However, as the statute under which the action is brought is distinctly a Federal one, the construction placed upon the act by the Federal courts is at all times controlling and an examination of the many cases cited in the briefs indicates, as was stated in *Pedersen v. Delaware, L. & W. R. Co.,* 229 U. S. 146, that, "The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?" Or as was said in *Shanks v. Delaware, L. & W. R. Co.,* 239 U. S. 536: "The true test of employment in such commerce in the sense intended is, Was the employee, at the time of the injury, engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?"

In so far as we are advised by the briefs, no more

comprehensive definition has been attempted by the Federal courts, and most of the cases cited seem to turn on the question of whether the particular circumstances bring the case within, or leave it without, the definition as thus stated.

Indeed, in a comparatively recent case, *Industrial Accident Commission of State of California v. Davis,* 259 U. S. 182, the Supreme Court of the United States said that it has not attempted to lay down "a precise ruling" that would enable "an instant undisputed application," and in that connection again repeated the rule as laid down in *Shanks v. Delaware, L. & W. R. Co., supra,* stating that this test was followed in *Chicago, B. & Q. R. Co. v. Harrington,* 241 U. S. 177, and *Southern Pac. Co. v Industrial Accident Commission of State of California,* 251 U. S. 259.

The plaintiff in the *Shanks* case received injuries while working in the repair shop of a common carrier upon an engine which had been employed in interstate commerce and was, as the court says, "destined to be so employed again." It is pointed out in that opinion that there is a difference in the instrumentalities of interstate commerce, and it is said: "Equipment out of use, withdrawn for repairs, may or may not partake of that character, according to circumstances, and among the circumstances is the time taken for repairs—the due relation of the withdrawal from use." The particular circumstances there were that the engine upon which the plaintiff worked was sent to the shop for overhauling on December 19, 1918; that the work upon it was not completed until February 25, 1919, and that the accident occurred while the work was being done on February 1, 1919. The court clearly distinguishes that from another case, saying of the engine: "It was not interrupted in an interstate haul to be repaired and go on," citing *Minneapolis & St. L. R. Co. v. Winters,* 242 U. S. 353, and *Chicago, K.*

*& S. R. Co. v. Kindlesparker,* 246 U. S. 657, on one of which cases the plaintiff here relies.

It is practically impossible and would probably not be helpful to attempt a review of the particular circumstances under which the courts have held that a given employment was either within or without the rule, as in *Kinzell v. Chicago, M. & St. P. R. Co.,* 250 U. S. 130, where an employee in charge of a car attached to a dump train used in filling in earth in the replacement of a railroad trestle of an interstate carrier (the employee also being engaged in the work of removing dirt and stone from between, the rails of the track) was held to be engaged in interstate commerce; or as in *North Carolina R. Co. v. Zachary, supra,* where it was held that the hauling of empty cars from one State to another is interstate commerce, and that an employee who was working on an engine presently to be used in hauling an interstate train, was likewise engaged; or in *Baltimore & O. R. Co. v. Fletchner,* 300 Fed. 318, where a switchman coupling up intrastate and interstate cars was held to be so engaged; or in *Pedersen v. Delaware, L. & W. R. Co., supra,* where a plaintiff, carrying bolts and rivets from a tool car to a bridge spanning an interstate road, to be used the next day in repairing the bridge, was likewise held to be so employed; or in *Erie R. Co. v. Szary,* 253 U. S. 86; *Erie R. Co. v. Collins,* 253 U. S. 77, and *New York Cent. & H. River R. Co. v. Carr,* 238 U. S. 260; all of which follow that decision; or *Southern R. Co. v. Puckett,* 244 U. S. 571, and *Seaboard Air Line Ry. v. Koennecke,* 239 U. S. 352, where it was held that a plaintiff engaged in repairing a disabled car which blocked a line used in interstate commerce was working in interstate commerce within the meaning of the act.

The cases seem to agree that the burden of showing that the sovereignty of the State abates in favor of that of the National Government is upon the plain-

tiff. *Chicago & A. R. Co. v. Industrial Commission,* 290 Ill. 599, and the cases also seem to draw a clear distinction between original construction work in the preparation of instrumentalities which may thereafter be used in interstate commerce and work done in the way of repairing such instrumentalities after the same have been actually constructed and devoted to an interstate use, holding in the first instance that one employed in doing such work is not engaged in interstate commerce, and in the latter case that he is.

A further distinction seems to run through all the cases between instrumentalities which are permanently devoted to interstate commerce and those which are so devoted only in a transitory way, it being held that in the case of those which are permanent, work done upon the same by way of repair is to be considered as in interstate commerce, while as to those used transitorily, the work will be considered as interstate or intrastate, according to the particular circumstances which indicate a purpose that the movement of the instrumentality is for an interstate or intrastate purpose. *Schauffele v. Director General of Railroads,* 276 Fed. 115; *Minneapolis & St. L. R. Co. v. Winters, supra.*

This court was required to consider such question in *Bishop v. Chicago, M. & St. P. Ry. Co.,* 217 Ill. App. 96, in a case where the plaintiff was injured while repairing a car, the last commercial service of which had been in interstate commerce and which after the repairs were made (it was disclosed by the evidence) was next used in interstate commerce, and where the evidence *failed to disclose* that during the interval between these two interstate services, while the car was undergoing repair, it was designed or intended to be next used in interstate commerce. The evidence there tended to show that it might have been designed to use the car next in either interstate or intrastate commerce. It was held that the plaintiff, under such

state of facts, failed to establish a case under the statute.

In *Roach v. Chicago, R. I. & P. Ry. Co.*, 227 Ill. App. 240, a plaintiff switchman was injured while performing switching services in and about the defendant's freight house and adjoining yards in Chicago, where it appeared from the evidence that there were a number of empty cars and some partially loaded standing on a certain track. One of these cars had arrived from Springfield, Ohio, carrying United States mail, which was unloaded on the morning of the day of its arrival, and the car was immediately reloaded and started with mail destined for St. Paul, Minnesota. The switching crew, wishing to place some more empty cars upon the track upon which this mail car stood, started to couple an engine to the mail car, intending to pull it out of the way of an intrastate movement of other cars, and in so doing the plaintiff was injured.

We said in that case: "The purpose of the movement of the interstate mail car was wholly unrelated to its interstate transportation," and held plaintiff could not recover under the statute.

From this review of the decisions, we are persuaded the evidence in this case fails to make *prima facie* proof of a case for plaintiff under the statute. When the interstate shipment of meat was unloaded at Twelfth Street, so far as the evidence here discloses, the interstate movement of the car ceased. Other movements, first to the track and later to the yards for repair, were presumptively intrastate movements, and there is no evidence from which a jury could reasonably find that such movements were other than intrastate movements. In fact, there is not a scintilla of evidence in the record showing that the movements of the car, first to the track and afterwards to the yards, were in connection with any interstate purpose. The plaintiff cannot establish her case by a guess. It may or may not have been that the movement of the

car to the track and afterwards to the yards for repair was only the interruption of a general interstate movement; but if such is the case, this record is wholly devoid of any testimony tending to show that material fact.

While there are some cases cited which, carried to a logical conclusion, might lead us to hold otherwise, in view of the clear statements in *Industrial Commission v. Davis, supra,* which has been followed in the more recent case of *Davis v. Baltimore & O. R. Co.,* 10 F. (2d) 140, we think the evidence wholly insufficient to establish a case for plaintiff; and since the judgment must for this reason be reversed, it will be unnecessary to discuss other alleged errors assigned and argued.

*Reversed and remanded.*

MR. JUSTICE JOHNSTON dissenting: The question whether the plaintiff's intestate was engaged in interstate commerce was a question of fact for the jury. And I do not think that the verdict of the jury is manifestly against the weight of the evidence. I disagree with the conclusion of the majority opinion that the evidence is "wholly insufficient to establish a case for the jury." I think that the question is a close and doubtful one. But the rule is that a reviewing court should not set aside the verdict of a jury merely because there may be a doubt of the correctness of the verdict, unless the verdict is manifestly against the weight of the evidence. *Illinois Cent. R. Co. v. Cowles,* 32 Ill. 116, 121; *De Forrest v. Oder,* 42 Ill. 500, 501. In my view there is sufficient evidence to sustain the verdict. The jury reasonably might have found that the car still retained its interstate character at the time of the accident; that the mere unloading of the car at the freight house at Twelfth Street did not terminate the interstate character of the car; that the ultimate destination of the car was the Elsdon yards at Fifty-first Street, and that the

interstate character of the car was not terminated until the car reached its ultimate destination; that it was the custom to make only light repairs at Twelfth Street and to make the complete repairs at the Elsdon yards; that when the car was being unloaded at the freight house at Twelfth Street, it was still an interstate car; that the car could not be left permanently on the track at the freight house at Twelfth Street after it was unloaded, but had to be moved to Elsdon yards; and that while the car was in transit from Twelfth Street, a temporary location, to the Elsdon yards, the permanent ultimate destination, it retained its interstate character.

MR. PRESIDING JUSTICE MCSURELY specially concurring: In my opinion, the unloading of the interstate freight terminated the interstate character of the car, and in the absence of any proof as to whether its next movement would be interstate or intrastate, the legal presumption that it would be intrastate prevails. Any other rule would lead to confusion.