(No. 10911.)

THE CHICAGO DRY KILN COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL BOARD OF ILLINOIS *et al.* Defendants in Error.

*Opinion filed December 21, 1916—Rehearing denied Feb. 9, 1917.*

1. WORKMEN'S COMPENSATION—*whether employee's occupation at the time of injury entitles him to compensation depends on circumstances.* Whether an employee's occupation at the time he is injured is in a line of employment so connected with the extra-hazardous business of his employer as to entitle him to compensation under the Workmen's Compensation act of 1913 depends to some extent on the particular facts of each case.

2. SAME—*when night watchman of lumber yard and planing mill is entitled to compensation.* A company engaged in drying lumber and operating a planing mill is engaged in an extra-hazardous business under the Workmen's Compensation act of 1913, and a night watchman employed to guard the property of the company against fires and trespassers is entitled to recover under the act when he is injured in a fight with a trespasser while in the performance of those duties.

3. SAME—*whether a night watchman was injured while protecting his employer's property is a question for the Industrial Board.* Whether a night watchman was injured while attempting to protect the property of his employer or was injured by reason of his having undertaken to guard an article of personal property of some third person in the employer's building is a question of fact to be determined by the Industrial Board from the evidence, and if there is competent evidence to support the finding of such board the Supreme Court cannot pass upon its sufficiency.

COOKE, J., dissenting.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

ADAMS, CREWS, BOBB & WESCOTT, for plaintiff in error.

GEORGE E. GORMAN, for defendants in error.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

Defendant in error W. W. Jackson (hereinafter called the applicant) was an employee of plaintiff in error (hereinafter called the company) as a night watchman. The company was engaged in drying lumber and operating planing mills, its plant covering several blocks in the city of Chicago. There were also on the premises of the company several buildings occupied by tenants, one of the buildings being occupied by Anderson & Shumaker as a blacksmith shop. Applicant's duties required him to watch the property of the company, and in so doing to make the rounds of the premises of the company and the premises of the respective tenants, including Anderson & Shumaker, every hour. In so doing he was required to walk about four blocks and was required to "pull" eleven "boxes" located in various parts of the premises of the company, one being in the shop of Anderson & Shumaker. The applicant had been employed as watchman for the company about five years, and on May 29, 1914, went to work as usual about six o'clock P. M. In making his rounds, when he arrived at the blacksmith shop he found three men there,—Hard, King and Miller, employees of Anderson & Shumaker. King asked permission to leave his motorcycle in the blacksmith shop. Applicant apparently was not acquainted with King but was assured by the other two that he was an employee, and gave his consent. King tossed him a dime, which fell to the ground, and the applicant picked it up. Applicant went on about his duties, and in making the next round of the premises returned to the blacksmith shop about seven o'clock. King was inside. Applicant again returned to the blacksmith shop about eight o'clock. At this time the door of

the blacksmith shop was locked and King was outside in the street or alley with his motorcycle. Applicant unlocked the blacksmith shop and went inside and hid the lock, with the intention, as he stated, of changing the lock or putting another one on the door. He returned to the blacksmith shop again about nine o'clock. King, who in the meantime had become intoxicated, demanded the lock from applicant, and upon applicant's refusal to give it to him struck at the applicant, who punched or struck at King with a cane which he carried and broke it. During the scuffle applicant, in trying to get away through the door and prevent King from getting the lock, as he claimed, caught his foot on the sill and fell and received the injuries complained of, which consisted of a fracture of the neck of the thigh bone.

Commencing June 6, 1914, a week after the accident, the company paid the applicant compensation at the rate of $7.50 a week for a period of forty-one weeks and then refused to continue making further payments. He then filed his application for an adjustment of claim with the Industrial Board. A committee of arbitration was appointed, as provided by the act, which heard the evidence of both parties and rendered its decision finding that the applicant was entitled to recover from the company $7.50 a week for a period of 416 weeks and was entitled to a pension of $10 a month thereafter during life. The company filed with the Industrial Board its petition for review of the decision of the committee on arbitration, alleging that the applicant was not totally disabled or incapacitated, that the alleged injuries did not arise out of the course of his employment, and that his present alleged incapacity did not result from the alleged accident. The Industrial Board rendered its decision finding that both the parties to the proceeding were at the time of the accident operating under and subject to all the terms and provisions of the Workmen's Compensation act; that the accident for which compensation was claimed arose out of and occurred in the

course of the applicant's employment; that his wages for the purpose of the proceeding were $15 per week, and that he was then totally and permanently disabled. The board confirmed the decision of the committee of arbitration, except that it ordered that after the expiration of the 416 weeks, for which the applicant was to be paid at the rate of $7.50 a week, he should receive from the company an annual pension of $249.60, payable in installments of $20.80 per month, for the remainder of his life, being eight per cent of the total amount which would have been due him had death resulted from the accident. The company then filed a *præcipe* with the clerk of the circuit court of Cook county for a writ of *certiorari* to the Industrial Board, which was issued and served upon the secretary of the board. On July 8, 1916, the court entered a judgment approving and confirming the finding of the Industrial Board and certified that the cause was one proper to be reviewed by the Supreme Court, and the company sued out this writ of error.

Two points are raised in the briefs: (1) The injury the applicant received did not arise out of and in the course of his employment in a business or enterprise under the Workmen's Compensation act; (2) the injury of the applicant did not arise out of the course of his employment.

It appears that the company had never elected to come under the provisions of the Workmen's Compensation act and would not be subject to its provisions unless the company was engaged in one of the occupations or businesses enumerated in paragraph (*b*) of section 3 of the act. (Laws of 1913, p. 339.) It is conceded by counsel for the company that the business of the company in operating drying kilns and a planing mill is one of the occupations which would involuntarily come under the act, and as we understand the argument of counsel there is no question that one of the employees engaged in the planing mill, for example, would be entitled to recover compensation under the act in

case of injury. The claim is that the duties of employment of the applicant in this case are not of such a nature as to entitle him to compensation under the act in case of an injury. Under the holding of this court in the recent case of *Vaughan's Seed Store* v. *Simonini,* 275 Ill. 477, the mere fact that an employer is engaged in some occupation or business which might be under the act does not entitle a person working for the employer to recover compensation for injuries where he is injured in the course of his employment in another business conducted by the employer or in some employment remote from and having no connection with the hazardous occupation. As to whether the employee claiming compensation for injuries under the act is engaged in a line of employment that entitles him to such compensation depends to some extent on the particular facts of each individual case. In *Suburban Ice Co.* v. *Industrial Board,* 274 Ill. 630, where a teamster was in the employ of a concern engaged in making ice and in delivering ice and fuel and whose duty it was to handle ice and coal and care for the horses used by the company on premises adjacent to the ice plant, it was held that his duties were of such a nature and so related to and connected with the occupation of the company as to bring both employer and employee within the provisions of the Workmen's Compensation act.

It is stated by counsel for the company in the argument that "if a watchman, being engaged in protecting the property of his employer from thieves, is injured no one would contend the injury did not arise out of the employment." It seems to be conceded by counsel for the company that the duties of the applicant required him, among other things at least, to guard the property of the company against fires and trespassers. Such an employment is not without its hazards and dangers. It must be assumed that the duties of the applicant were necessary to the protection of the company's property or he would not have been employed

for that purpose, and in such employment he would run the risk of being subject to assault and injury in protecting the property of the company,—and that was, in fact, what happened in this case according to the finding of the Industrial Board. In the case of *Anderson* v. *Balfour*, 2 I. R. 497, a game-keeper was attacked by poachers and wounded. It was held that he was entitled to recover under the Workmen's Compensation act of Great Britain, from which the Illinois act was taken. In the case of *Nesbit* v. *Bayne & Burn*, 2 K. B. 689, Nesbit was employed as a cashier, and in the performance of his duties, while carrying a large sum of money and going by train to his employer's colliery, was shot and killed. The court held that the risk of being attacked by reason of carrying large sums of money was incidental to his employment and that the murder was an accident which arose out of his employment. To the same effect is *Challes* v. *London and Southwestern Railway Co.* 2 K. B. 154.

A number of cases are cited by counsel for the company. Without commenting upon them, it is sufficient to say that it was held by the court in each of those cases that the employee was not entitled to recover compensation for the reason that the injuries complained of did not arise out of and in the course of his employment but by reason of something that happened outside such employment. In this case the Industrial Board found to the contrary, and, as above pointed out, the facts and circumstances under which the action arose seem to entirely justify the conclusion arrived at by the board that the applicant, as a watchman and in the course of his employment as such watchman, was injured while performing the duties as such for the company.

The second point urged for reversal, that the injury to the applicant did not arise out of and in the scope of his employment, is based upon the assumption that the applicant received his injury by reason of doing something outside of the scope of his employment,—that is, under-

276 — 36

taking to watch the motorcycle of King and that King gave him a dime for so doing. Whether the applicant was injured by reason of guarding his employer's property as he was hired to do and which injury would be one arising out of or in the scope of his employment, or was injured by reason of having undertaken to guard the motorcycle of King, which was something outside of his employment, was a question of fact to be determined from the evidence by the Industrial Board. If there is competent or legal evidence to support the decision of the board it is not within the province of the court to pass upon its weight or sufficiency. (*Parker-Washington Co.* v. *Industrial Board,* 274 Ill. 498; *Armour & Co.* v. *Industrial Board,* 273 id. 590.) If the applicant had undertaken to watch the motorcycle for the owner thereof and had received his injuries in attempting to prevent someone from stealing it, or otherwise because of his undertaking to watch the motorcycle, a different question would arise. But such is not the case. There was evidence to sustain the finding of the Industrial Board, which was, in effect, that even though the applicant had agreed to watch King's motorcycle and such agreement was outside the scope of applicant's employment, such agreement had terminated at the time the accident occurred, as the testimony showed conclusively that King had taken the motorcycle from the blacksmith shop and had it out in the street at the time of the accident, and that the alleged understanding between applicant and King with reference to watching the motorcycle had no bearing upon the case, and that the altercation between King and the applicant in which applicant was injured came about by reason of applicant becoming suspicious of the movements of King and taking measures to keep him out of the blacksmith shop.

For the reasons given, the judgment of the circuit court will be affirmed.                    *Judgment affirmed.*

Mr. JUSTICE COOKE, dissenting.