R. W. BURDETTE *v.* STATE COMPENSATION COMMISSIONER

(No. 7491)

Submitted February 7, 1933.   Decided February 14, 1933.

*W. G. Brown,* for appellant.

*H. B. Lee,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for respondent.

WOODS, JUDGE:

Claimant, during his tour of duty and while on the premises occupied by the employer, was knocked unconscious by a blow on the head, and robbed.   Compensation was denied him on the ground that the disability was not the result of an injury received in the course of and resulting from his employment. He appeals.

The employer was engaged in the construction of a tunnel a short distance above Gauley Bridge, on New River, and by reason thereof occupied a narrow strip of ground (approximately 500 yards long according to a map) at the base of the mountain along New River—between the railroad bridge over New River and the tunnel—with railroad yards, power house, pump, crane, locomotive, and other equipment and supplies for carrying on the work. Claimant and one Beavers seem to have been the only employees on night duty in the particular area—their tour of duty running from 7 p. m. to 6 a. m. Both were required to operate certain pumps, which were located near the upper end of the premises in the vicinity of the power house, and, in addition, claimant was required to keep certain machinery, including a locomotive, fired up ready for work in the morning. The locomotive, on the night of the injury, was located near the lower end of the premises, approximately three hundred yards below the power house. This part of the premises was unlighted. There is considerable evidence that the locality was infested with bootleggers and gamblers who used the premises as a thoroughfare between an improvised camp, termed ''Jungles'', located under rocks across the river and just above the railroad bridge, and the steps at the power house which were used in going to camps Nos. 1 and 2, back on the mountain above the upper end of the operations proper. Claimant stated that gasoline, oil and coal had been taken from the property, and that on different occasions he had driven off suspicious characters.

Claimant was last seen between 9:30 and 10:00 p. m. by Beavers. According to the latter, claimant at that time stated that he was on his way to the crane to bank up the fire, and after completing that duty would be through, except for his pumping. At midnight (lunch period), Beavers went down to the crane in search of claimant, but found no trace of him. Early in the morning some of the employees on their way to work found claimant in an unconscious condition near the locomotive. Shortly thereafter, a member of the department of public safety found claimant's lantern and cap which had been hidden some distance below the place of the alleged assault. A pick handle, with human hair on it, was also found in the vicinity of the crime. Claimant's watch had been

jerked from the chain, and his wallet taken. However, the pay check received that day, which was concealed in his shirt, was not removed.

Was the disability the result of an injury received "in the course of and resulting from" the employment? The injury was undoubtedly incurred in the course of the employment. So it remains only to determine whether it resulted from the employment. "To give right of compensation, an injury must result from, or arise out of, the employment." *Archibald* v. *Commissioner*, 77 W. Va. 448, 87 S. E. 791. In Massachusetts, where the compensation act reads "injury arising out of and in the course of his employment", the supreme court, in dealing with the origin of injuries as contemplated by the act, said that an injury "arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." *McNicol's* Case, 215 Mass. 497, 102 N. E. 697. The seeming conflict in many of the cases, which deal with almost every conceivable situation, can usually be cleared up, if we apply the foregoing test to the particular facts involved. As the court explains in the *McNicol* case, *supra,* "If the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant."

The fact that the injury may have been due to the willful misconduct of a third person does not necessarily take it outside the act. A watchman who receives injuries while protecting his employer's property is clearly within the protection of the act, although the injuries were received by an assault

by intruders. *Chicago Dry Kiln Co.* v. *Industrial Bd.*, 276 Ill. 556, 114 N. E. 1009. Likewise, where a watchman, or caretaker, employed to protect property from trespassers is killed by a bullet fired by boys whom he had driven away because they were firing onto the property, and who returned and renewed their firing, to induce him to chase them again, the court held that the accident arose out of decedent's employment. *Munro* v. *Williams*, 94 Conn. 377, 109 Atl. 129.

And recovery has been permitted in some cases where the employee has been assaulted, and sometimes killed, for personal reasons, such as robbery, and the like, where, owing to the special conditions, there is an increased danger of injury by ill-disposed persons. In the case of *Todd* v. *Easton Furniture Mfg. Co.* (Md.), 128 Atl. 42, where a watchman was murdered by a man with whom he had previously quarrelled, the court said: ''The conditions under which he was working when he lost his life were such as to place him at a special disadvantage with respect to any trespasser who designed to do him injury. As a night watchman making periodical rounds, his movements could be readily followed by one familiar with his duties. While guarding his employer's property, he was himself unprotected. The assault which caused his death might have been committed elsewhere, but the attack could be made with greater assurance of success, and of safety for the assassin, if planned for a time when the intended victim was performing his lonely duty, and was without opportunity to obtain assistance.''

The argument was advanced in the case of *Lanni* v. *Amsterdam Bldg. Co.*, 217 N. Y. App. Div. 278, 216 N. Y. Supp. 763, that decedent (a night watchman) was murdered by one who sought to rob him (he having received his wages about 5 o'clock in the afternoon), and therefore his death was not the result of an injury arising out of his employment. ''We think the injury arose out of his employment'', said the court, ''which involved the receiving of wages and the consequent increase of risk of robbery; his employment placed him alone on the premises with his wages in his pocket, thus furnishing an opportunity for robbery without interference—a risk beyond the common risk.''

In the case of *Dyer* v. *Lumber Co.*, 154 La. 1091, 98 So. 677, where the employee, while making a fire in defendant's engine at night in an isolated locality, was shot and killed by an unknown party, the court, in holding the injury to be compensable, said: "We think that where a workman is exposed to some risk manifestly necessitated by his employment, he is entitled to his compensation, unless it be manifest that he would, at the time of the occurrence, have been equally exposed to the same risk outside of his employment. And we cannot assume that a man is exposed to the same danger of attack at his own home, or in some frequented place, or in the daytime, as he would be when called by his employment to some lonesome spot and in the nighttime."

The attack on the claimant in the instant case was more than a mere personal assault, or an ordinary hold-up, which might have happened on the road, in the open country, or on the streets of a city. His duties placed him at a special disadvantage with respect to any trespasser who designed to do him injury. The section in which the locomotive had been left was not lighted; and the track claimant was required to use in reaching same was frequented by many questionable persons during the nighttime. Claimant had been paid that afternoon, and would be expected to have money on his person. The existing conditions were creatures of the employer's own making. Claimant had to take them as he found them. He had on former occasions ordered intruders and pilferers off the premises in order to protect property belonging to his employer. Under the circumstances, we are of opinion that the claim resulted from the employment.

The ruling of the commissioner will therefore be reversed and the case remanded.

*Reversed and remanded.*