(No. 26286.—<span style="background:black"></span>
CATERPILLAR TRACTOR Co. Plaintiff in Error, *vs.* MARTIN
P. DURKIN, Director of Labor, *et al.,* Defendants in
Error.

*Opinion filed June 11, 1942.*

SMITH, J., dissenting.

MILLER, WESTERVELT, JOHNSON & GUENTHER, (EUGENE R. JOHNSON, of counsel,) for plaintiff in error.

GEORGE F. BARRETT, Attorney General, (ALBERT E. HALLETT, of counsel,) for defendants in error.

Mr. JUSTICE FARTHING delivered the opinion of the court:

This is a case arising under the Unemployment Compensation act. (Ill. Rev. Stat. 1941, chap. 48, pars. 217 *et seq.*) Plaintiff in error filed a petition for writ of error to review the judgment of the circuit court of Tazewell county which approved a decision of the Director of Labor, who allowed unemployment benefits to strikers at plaintiff in error's factory. While the petition was pending, the legislature amended the Unemployment Compensation act so as to authorize an appeal to this court. It is therefore immaterial whether the cause be styled a writ of error or an appeal.

Plaintiff in error, the Caterpillar Tractor Company, is a California corporation engaged in the manufacture and sale of tractors, road machinery and diesel engines. The defendants in error are the Director of Labor and 108 individuals formerly employed by plaintiff in error in its pattern shop at its factory in East Peoria, Illinois.

Prior to November 18, 1940, plaintiff in error employed at its East Peoria plant 11,750 employees, 10,000 of whom were engaged in manufacturing operations. One of the departments of the factory is the pattern shop. It has its own superintendent and is the only department at the factory with a separate maintenance crew. Plaintiff in error conducts an apprentice training school for the pattern shop workers whose course of instruction is different from that

given to other employees. The employees of the pattern shop use a time clock located within the shop. The work of the pattern shop is to make patterns from which grey iron castings are moulded. There are in existence throughout the country pattern shops not connected with any foundry which make a business of supplying patterns to foundries and manufacturing plants. During the peak periods when its own shop is overloaded, plaintiff in error buys some patterns from these independent shops.

A wage dispute arose, and on November 18, 1940, the 108 pattern makers went out on a strike. Some work was continued in the pattern shop by apprentices until November 20, 1940, when it ceased entirely. The rest of the factory continued work.

The sole question involved in this case is whether the striking pattern shop employees are entitled to benefits under the Unemployment Compensation act.

Section 1 of the act (Ill. Rev. Stat. 1941, chap. 48, par. 217) contains a statement of the public policy of the State as an aid to the interpretation and application of the act. It says, "Economic insecurity due to involuntary unemployment has become a serious menace to the health, safety, morals and welfare of the people of the State of Illinois. Involuntary unemployment is, therefore, a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family."

From this declaration of public policy it would seem that the legislature intended that only those who were involuntarily unemployed should receive unemployment compensation. One who strikes becomes voluntarily unemployed. *Kemp* v. *Division No. 241,* 255 Ill. 213; *Henrici Co.* v. *Alexander,* 198 Ill. App. 568.

Pursuant to its declared policy the legislature provided in section 7(d) (Ill. Rev. Stat. 1941, chap. 48, par. 223)

that an individual shall be ineligible for benefits "(d) For any week with respect to which it is found that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed, provided, that this subsection shall not apply if it is shown that (1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work and (2) He does not belong to a grade or class of workers of which immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; provided, that if in any case separate branches of work which are commonly conducted as separate businesses in separate premises are conducted in separate departments of the same premises, each such department shall, for the purpose of this subsection, be deemed to be a separate factory, establishment, or other premises."

By this section the legislature clearly provided that if a person's unemployment is caused by a stoppage of work due to a labor dispute at the factory where he was employed, he is not entitled to benefits. This is qualified by the provisions that he shall receive benefits even though his unemployment was caused by a stoppage of work due to a labor dispute at the factory, if he was not participating, financing or directly interested in the labor dispute, and he did not belong to a class or grade of workers any of whom were participating, financing, or directly interested in the dispute. Inasmuch as the pattern makers were the strikers, they clearly do not fall within the proviso.

This subsection clearly provides that a department with a separate branch of work that is commonly conducted as a separate business shall be deemed to be "a separate factory, establishment or other premises" within the meaning of the act. Pattern making shops are commonly con-

ducted as separate businesses. The pattern shop here was a separate department of the factory. It had its own foreman, supervisor, time clock, maintenance crew, and training school. Pattern making is recognized as a specialized trade.

From a consideration of the act, it appears to us that the legislature clearly did not intend that those voluntarily unemployed due to a labor dispute at the factory which caused a stoppage of work should receive unemployment compensation. They specifically so provided in section 7(d) of the act.

The circuit court erred in affirming the decision of the Director of Labor who allowed unemployment compensation. It should have quashed the record. Its decision is reversed and the cause remanded with directions to it to quash the record made by the Director of the Department of Labor.

*Reversed and remanded, with directions.*

Mr. JUSTICE SMITH, dissenting:

I am unable to concur in the foregoing opinion. In my judgment the evidence in the record does not justify the conclusion that the pattern shop was "a separate factory, establishment, or other premises" as defined in the act.