**Earl LOUCKS, Plaintiff-Appellant,**

v.

**STAR CITY GLASS COMPANY,
Defendant-Appellee.**

No. 76–1553.

United States Court of Appeals,
Seventh Circuit.

Submitted Without Argument
Nov. 29, 1976.

Decided March 25, 1977.

Rehearing and Rehearing En Banc
Denied June 3, 1977.

Mark L. Schwartzman, Chicago, Ill., for plaintiff-appellant.

Ronald S. Bailis, Chicago, Ill., for defendant-appellee.

Before CASTLE, Senior Circuit Judge, and PELL and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

Plaintiff-appellant Loucks appeals from the decision of the district court dismissing his complaint for failure to state a claim for which relief can be granted. The question presented in this diversity case is whether Illinois law recognizes a cause of action to remedy Loucks' 1974 discharge from his employment with defendant-appellee Star City Glass Company, which employment was otherwise terminable at will, where it is alleged that Star City discharged Loucks solely because he sought medical attention for an injury received in the course of his employment and expressed his intention to secure compensation under the Illinois Workmen's Compensation Act, Ill.Rev.Stat. 1975, ch. 48, § 138 et seq.

Under the principles announced first in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), our answer to this question must be based on Illinois state law, as determined by the state legislature and the highest state court. As Justice Frankfurter observed in *Bernhardt v. Polygraphic Company of America, Inc.*, 350 U.S. 198, 209, 76 S.Ct. 273, 279, 100 L.Ed. 199 (1956) (concurring opinion), "[a]s long as there is diversity jurisdiction, 'estimates' are necessarily often all that federal courts can make in ascertaining what the state court would rule to be its law." (Footnote omitted.)

This problem is particularly apparent here, for Illinois' Workmen's Compensation Act, as it stood at the pertinent times, did not expressly treat the question presented to us, and no Illinois court of appellate jurisdiction, let alone the Illinois Supreme Court, has yet passed upon the matter.[1] We must nonetheless decide the case as we believe the Illinois courts would. *Walker v. Kruse*, 484 F.2d 802, 805 (7th Cir. 1973). We do so, however, cognizant that it is Illinois law we are attempting to divine, and also that we sit as a court, not as a legislature; it is not our province as a federal appellate court to fashion for Illinois what we are certain many would say was a wise and progressive social policy.

We have said this much about the nature of our judicial task in this case because we recognize that Loucks' claims have a certain appeal to notions of fairness. On the other hand, until the advent of the workmen's compensation acts, many, if not most, industrial accidents went uncompensated, at least as far as the employer was concerned, because of the inability to prove fault upon which civil liability could be predicated or frequently because of the bar of contributory negligence. Under the compensation statutes, an award was made payable to the injured employee without regard to fault on the part of the employer or employee and the cost of this remedy was spread over all industry. This was purely a legislative determination and that, or the area of labor-management relations, is where, in our opinion, extensions of the principles of compensation over and above those inherent in construction of the statutes, should remain. Certainly it could be argued that acceptance of Loucks' claim here would be tanta-

---

1. Loucks refers us to an unreported trial court decision in the Circuit Court of the 11th Judicial District of Illinois, *Kelsey v. Motorola, Inc.*, No. 73–L–1080 (April 1975), which purportedly found a cause of action to exist for a retaliatory discharge such as is alleged here. Such a decision, which is not binding on any other court in Illinois, is of at best limited value in making the necessary *Erie* estimate of Illinois law. *See King v. Order of United Commercial Travelers of America*, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948); *Greene v. United States*, 476 F.2d 116, 119 (7th Cir. 1973). The *Kelsey* case is currently pending on appeal in the Illinois Court of Appeals, Fourth District (No. 13290), having been argued there in March 1976. Neither party has asked this court to await the decision in *Kelsey*. Even if that decision were now to come down, while it would undoubtedly merit the most respectful consideration by this court, we would of necessity have to be aware of the possibility of further appeal in that case and further delay in deciding the case before us.

mount to writing into the Illinois statute a provision for tenure in the event of an industrial injury.

The Illinois legislature has now spoken as to the lawfulness of retaliatory discharges in this situation. Ill.Rev.Stat.1975, ch. 48, § 138.4(h), effective July 1, 1975, provides as follows:

> (h) It shall be unlawful for any employer, insurance company or service or adjustment company to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his exercise of the rights or remedies granted to him by this Act.
>
> It shall be unlawful for any employer, individually or through any insurance company or service or adjustment company, to discharge or to threaten to discharge, or to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise of his rights or remedies granted to him by this Act.

Because Loucks was discharged more than a year before this provision became law, we have no occasion to decide whether § 138.4(h) now authorizes a private right of action for a retaliatory discharge.[2] All that we do decide today, whatever the equities supporting Loucks' position may be, is that the district court properly concluded that such a right of action did not exist in Illinois to remedy Loucks' 1974 discharge.

Although the parties cite and our research has disclosed no Illinois authorities squarely on point, one clear and well-established line of cases is directly relevant to our determination. As this court has re-

peatedly recognized, Illinois follows the rule that

> [a]n employment contract not specifically intended by the parties to be any certain duration creates an employment relationship which is terminable at will by either party without cause and without liability.

*Buian v. J. L. Jacobs and Company,* 428 F.2d 531, 533 (7th Cir. 1970); *cf. Brekken v. Reader's Digest Special Products, Inc.,* 353 F.2d 505 (7th Cir. 1965).

Loucks does not argue on appeal that his employment contract with Star City was not one that was terminable at will. He argues instead that his employment was not terminable at will *for the alleged retaliatory purpose.* This argument, however, fails to take into account that the words "terminable at will" mean largely just what they say. Such an employment relationship is intrinsically a very fragile thing, which either party may end with or without cause, *Roemer v. Zurich Insurance Company,* 25 Ill.App.3d 606, 323 N.E.2d 582, 585 (1975), and at his pleasure, *Long v. Arthur Rubloff & Co.,* 27 Ill.App.3d 1013, 327 N.E.2d 346, 353 (1975). The termination, then, may permissibly be for a good reason, a bad reason, or no reason at all. A court may be sympathetic to hardship inflicted on a discharged employee and unsympathetic to "bad" reasons motivating a discharge, but it is not the judicial business to rewrite a fragile employment contract to which the parties have agreed. *Brekken, supra; Isabelli v. Curtis 1000, Inc.,* 31 Ill.App.3d 1030, 335 N.E.2d 538, 545 (1975).

The firmly established general principles applicable to termination in employment at will situations are, of course, subject to exceptions. Federal statutory law, for example, makes it an unfair labor practice to discharge an employee for engaging in lawful concerted labor activities. 29 U.S.C.

---

**2.** The parties each urge us to take guidance from the 1975 amendments, although each recognizes that they are not directly on point. Star City cites the amendments as evidence that the Illinois legislature has consciously rejected a civil remedy for retaliatory discharges and that prior to 1975 Illinois had no legal position on such discharges. Loucks, on the

other hand, considers the 1975 amendments as merely criminalizing what was already conduct implicitly violative of public policy and, thus, as having no impact on the existence of a civil remedy. We decline the parties' invitation to engage in the unwarranted speculation a decision on such grounds would require.

§ 158(a)(1) and (3). Similarly, discharge because of an employee's race, color, religion, sex, or national origin is an unlawful employment practice. 42 U.S.C. § 2000e–2(a)(1). Illinois, too, has limited an employer's otherwise unbridled discretion to discharge an at-will employee in several statutory enactments. *See, e. g.,* Ill.Rev.Stat. 1975, ch. 48, §§ 884, 886 (unlawful to discharge employee on the basis of age or the employee's exercise of rights under the age discrimination law); Ill.Rev.Stat.1975, ch. 48, § 39.11 (unlawful to discharge employee because of wage demands on employer for employee's indebtedness); Ill.Rev.Stat.1975, ch. 62, § 88 (unlawful to discharge employee because his wages are garnished); Ill.Rev. Stat.1975, ch. 38, § 65–23 (unlawful to discharge employee because of physical or mental handicap not related to job performance). A similar statutory provision, as we have noted, now makes unlawful the type of retaliatory discharge alleged in Loucks' complaint.

Even assuming arguendo that each of these statutes so conditions an employer's right to discharge that violation of them would create a private cause of action for wrongful discharge, this would not advance Loucks' argument.[3] For the Illinois Workmen's Compensation Act, as it stood in 1974, in no way expressed any limitations on employers' traditional rights to discharge per their employment contracts. We find this fact significant, because the Act spells out in substantial detail the rights of employees and the obligations of employers. It provides, *inter alia,* that

> [t]he compensation herein provided, together with the provisions of this Act, *shall be the measure of the responsibility of any employer* [covered by the Act].

Ill.Rev.Stat.1975, ch. 48, § 138.11 (emphasis supplied). We think it rather unlikely that a retaliatory discharge prohibition would have been omitted from this comprehensive and integrated legislation if it had been intended. See, in this regard, the opinion of the Missouri Supreme Court in *Christy v. Petrus,* 365 Mo. 1187, 295 S.W.2d 122 (1956), which used similar reasoning in rejecting a private right of action for a retaliatory discharge *even though Missouri's Workmen's Compensation Act contained a criminal prohibition of such discharges.*

Loucks relies heavily on the decision of the Indiana Supreme Court in *Frampton v. Central Indiana Gas Company,* 260 Ind. 249, 297 N.E.2d 425, 63 A.L.R.3d 973 (1973). In *Frampton,* the court did find a private remedy to be implicit in the state Workmen's Compensation Act, and some of the reasoning used therein might be applied to this case, but we think the case is meaningfully distinguishable because it placed express reliance on Indiana's statutory language prohibiting any "device" to circumvent employers' liabilities under the Act. *Id.,* 297 N.E.2d at 428. No similar language appears in the Illinois statute in force in 1974.

We also note the more recent case of *Sventko v. Kroger Company,* 69 Mich.App. 644, 245 N.W.2d 151 (1976), in which the Michigan Court of Appeals in a two-to-one decision reached the same result as in *Frampton.* Because no reliance was placed therein on distinguishing statutory language, candor compels the admission that *Sventko* is not readily distinguishable from this case. We are not persuaded, however, that *Sventko* is the law of Illinois. We might just as well follow the reasoning of the Missouri court in *Christy, supra,* or the South Carolina Supreme Court in *Raley v. Darling Shop of Greenville, Inc.,* 216 S.C. 536, 59 S.E.2d 148 (1950), both of which reached the opposite conclusion.

Of the appellate courts from other states passing upon the general issue of retaliatory discharge in the workmen's compensation situation, we note that of the three which are from state Supreme Courts only *Frampton* is supportive of the appellant's

---

**3.** Indeed, to the degree the cited Illinois statutes indicate the Illinois legislature's ability to make plain any intended discharge prohibitions, they tend to support Star City's argument that no legislative concern for this problem had developed in 1974. Further, the cited statutes support the proposition that the proper forum for consideration of restrictions on discharges following exercise of statutory rights is the legislature and not the courts.

position. That case, as previously noted, relied upon the inclusion of the word "device" with regard to circumventing employers' liabilities under the Act. Conversely, the inclusion of "device" in the Federal Employers' Liability Act, a statute that has sometimes been described as approaching a workmen's compensation act in application, was held not to preclude a discharge because the liability created under the FELA was not that of continuing "a man in the carrier's employment." *Greenwood v. Atchison, Topeka and Santa Fe Railway Company*, 129 F.Supp. 105, 107 (S.D.Cal.1955).

Our understanding of our proper role as a federal court, and not a state legislature, leads to the conclusion that there is no evidence of a cause of action in Illinois to remedy a 1974 discharge based on the exercise of workmen's compensation rights, and it is not for us to create one. Loucks prosecuted and was compensated for his workmen's compensation claim; the Act as it stood at that time guaranteed him no more. Although Star City's actions, if motivated as is alleged, "might be considered reprehensible, there was no actual invasion of [Loucks'] legal right . . . ." *Raley, supra*, 59 S.E.2d at 149.

We have considered the other non-Illinois authorities cited by Loucks, none of which concern workmen's compensation, and we do not find them persuasive.

Although we have not been persuaded to accept the plaintiff's contentions by the fact that the three most recent cases of which we are aware involving the present issue support Loucks' position to some extent, we do suggest that a plaintiff who has a choice of the state or federal-diversity litigation locale, where the precisely applicable state law has not been determined, might seriously consider that state courts, as demonstrated in the three most recent cases, may be somewhat freer to fashion new state remedies than will the federal courts, which must attempt to discern the applicable state law upon the basis of what has been theretofore said by the state courts.

For the reasons herein set out the judgment of the district court is

AFFIRMED.