MARILYN JO KELSAY, Plaintiff-Appellee, *v.* MOTOROLA, INC., Defendant-Appellant.

Fourth District   No. 13290

Opinion filed August 31, 1977.

CRAVEN, P. J., dissenting.

Robert V. Nystrom, of Chicago, for appellant.

Mike McElvain, of Bloomington, for appellee.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Plaintiff's complaint alleged that defendant wrongfully discharged plaintiff from her employment following the filing of her claim for injury under the Workmen's Compensation Act. Characterizing defendant's conduct as wilful and wanton, plaintiff sought actual damages in the sum of $4000 and punitive damages amended to the sum of $500,000.

The trial court directed a verdict for plaintiff as to liability and the jury awarded $1000 in actual damages and $25,000 in punitive damages. The awarded actual damages was remitted to $749.

The complaint is framed solely in tort alleging plaintiff's injury in February 1973, in the course of her employment, the filing of an application before the Industrial Commission in March, and that plaintiff was discharged by defendant's personnel manager on June 6, after several

conversations concerning the dismissal of the pending application before the Industrial Commission.

The record shows that in November 1973 plaintiff entered into a settlement contract in the sum of $745.50, computed upon a weekly wage of $74. The settlement contract discloses that plaintiff's medical expenses had been paid by the employer and that she had no unpaid expenses for care or treatment.

Defendant's position is that plaintiff's employment may be terminated at any time by either party at will, without liability. The fact that the employment was at will is not disputed. It has been the established rule in Illinois that where the employment relation specifies no fixed duration it is a hiring at will which may be terminated at will with or without cause and with no right of action for discharge. 17 Ill. L. & Prac. *Employment* §§7, 21, 26 (1956); *Roemer v. Zurich Insurance Co.* (1975), 25 Ill. App. 3d 606, 323 N.E.2d 582; *Long v. Arthur Rubloff & Co.* (1975), 27 Ill. App. 3d 1013, 327 N.E.2d 346.

Plaintiff argues that a discharge under such allegation is an act in violation of public policy stated in the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*), and as such creates a tortious wrong which authorizes actual and punitive damages.

■■■ The Workmen's Compensation Act was adopted to provide a new system for compensating employees' injuries in place of the common law rights formerly pursued. (*Grand Trunk Western Ry. Co. v. Industrial Com.* (1919), 291 Ill. 167, 125 N.E. 748.) Its stated purpose is to provide that cases of injury incurred in the course of employment shall be compensated by the industry. *Shell Oil Co. v. Industrial Com.* (1954), 2 Ill. 2d 590, 119 N.E.2d 224.

The Preamble of the Act, approved July, 1951, states the purpose of "providing for the enforcement and administering thereof, and a penalty for its violation * * *."

Section 26 of the Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.26) provides "[a]ny wilful neglect, refusal or failure to do the things required to be done by any section, clause or provision of this Act, on the part of the persons herein required to do them, *or any violation of any of the provisions or requirements hereof*, or any attempt to obstruct or interfere with any court officer, or any other person charged with the duty of administering or enforcing this Act, is a petty offense" (emphasis supplied) to be enforced by the State's Attorney or the Attorney General upon the request of the Industrial Commission.

At the time of this complaint there was no provision of the Act directed to the question of the right of an employer to discharge an employee at will. On the contrary, established case law in Illinois remained that an

employee at will could be discharged without cause. In such circumstance it is appropriate that liability be determined and made clear by the legislative act so that the employer may clearly understand both the rights and liabilities concerned.

Section 11 of the Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.11), provides:

> "The compensation herein provided, together with the provisions of this Act, *shall be the measure of the responsibility of any employer* engaged in any of the enterprises or businesses enumerated * * *." (Emphasis supplied.)

An amendment effective July 1, 1975, provides:

> "It shall be unlawful for any employer, individually or through any insurance company or service or adjustment company, to discharge or to threaten to discharge, or to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise of his rights or remedies granted to him by this Act." Ill. Rev. Stat. 1973, ch. 48, par. 138.4(h).

An examination of the several statutes dealing with matters of employment discloses that the legislature had relied upon a system of statutory penalties for enforcement of the respective statutes. So, in Illinois Revised Statutes 1975, chapter 48, we find such provisions in paragraphs 881-887 relating to age discrimination; in paragraphs 5-6 relating to the hours of employment of women; in paragraphs 8(a)-8(g) providing for one day of rest in seven; in paragraphs 31.1-31.19 relating to the employment of children, and in paragraph 39.11 relating to the discharge of an employee for making a wage assignment. Such last provision making discharge unlawful and providing a penalty for violation was first effective in October 1, 1975.

In matters of employment the legislature has provided for a civil action as to violations of the minimum wage law (ch. 48, pars. 1001—1012) which only permits the recovery of an underpayment of wages.

We are directed to the Service Men's Employment Tenure Act (Ill. Rev. Stat. 1973, ch. 126½, par. 32 *et seq.*), declaring the public policy where men enter into military service. That statute specifies this particular form of relief in restoration to employment and compensation. It does not provide a civil action in tort. Similarly, the Fair Employment Practices Act (Ill. Rev. Stat. 1973, ch. 48, par. 851 *et seq.*), designates the statutory procedures concerning grievances and the forms of relief to be provided. It does not create a civil action in tort.

In one instance, the Act relating to equal opportunity for the handicapped (Ill. Rev. Stat. 1971, ch. 38, par. 65—21 *et seq.*), the statute specifically creates a civil action for *damages* as to conduct which violates the stated public policy.

The interest of the employee has been likened to that of an individual

protected under the Federal Civil Rights Act. That Act, however, by statute creates a cause of action for damages at law and equity. (42 U.S.C. §1983 (1970).) Similarly, the civil rights statute of this State (Ill. Rev. Stat. 1973, ch. 38, par. 13—3), specifically creates its criminal penalty, as well as a cause of action for damages.

Plaintiff likens this case to that of a "retaliatory eviction" for purposes of creating an action in tort. In 1963, the legislature adopted the statute (Ill. Rev. Stat. 1963, ch. 80, par. 71) which declared it to be against public policy to terminate or refuse renewal of a lease because the tenant complained of building violations, and that a lease provision effecting a contrary result was null and void. Such provision has been construed to create an affirmative defense in an action to evict. *Clore v. Fredman* (1974), 59 Ill. 2d 20, 319 N.E.2d 18.

In oral argument plaintiff relied upon the authority of *Frampton v. Central Indiana Gas Co.* (1973), 260 Ind. 245, 297 N.E.2d 425; Annot., 63 A.L.R. 3d 88, 173 (1975).

In *Frampton*, the issue was the sufficiency of the pleading to state a cause of action seeking actual and punitive damages upon allegations comparable to those alleged here. The trial court had entered judgment for the defendant on the pleading. Upon examination of the language of the Indiana statute, "No contract or agreement, written or implied, no rule, regulation or *other device* shall, in any manner, operate to relieve any employer in whole or in part of any obligation created by this act" (emphasis supplied) the court stated:

"We believe the threat of discharge to be a 'device' within the framework of 22-3-2-15, and hence, in clear contravention of public policy. By denying transfer and allowing the trial court's dismissal to stand we would be arming unethical employers with common law authority." 260 Ind. 245, 252, 297 N.E.2d 425, 428.

It does not appear that the Indiana statute provided a system of penalties and means of enforcement comparable to the statutes concerning employment in Illinois. It is also apparent that the Supreme Court of Indiana was construing its statute as a source of authority to sue.

Subsequent to submission in this court, plaintiff presented as supplemental authority *Sventko v. Kroger Co.* (1976), 69 Mich. App. 644, 245 N.W.2d 151. In three opinions it was held to be error to sustain a demurrer to a complaint alleging a "retaliatory discharge" for the reason that such discharge was against the public policy of Michigan. It cannot be ascertained from the opinion whether the action was pleaded in contract or in tort. It does not appear that the Michigan statute undertakes to enforce such Act through statutory penalties.

Plaintiff cites *L'Orange v. Medical Protective Co.* (6th Cir. 1968), 394 F.2d 57; *Petermann v. International Brotherhood of Teamsters* (1959), 174

Cal. App. 2d 184, 344 P.2d 25; *Monge v. Beebe Rubber Co.* (1974), 114 N.H. 130, 316 A.2d 549, as cases where a cause of action was found. *L'Orange* was an action upon a contract for malpractice insurance allegedly for purposes of intimidating plaintiff who had testified as an expert in malpractice cases. He contended that the cancellation was against public policy and that damages should be allowed. The court determined that recovery was limited to breach of contract. *Petermann* did not concern employment at will under the court's finding. In *Monge*, the action was for breach of contract and the court held that such action would lie for a bad faith discharge.

In the light of the legislative history of the Workmen's Compensation Act, and the other statutes directed to regulation of an employer's conduct, we conclude that the legislature when departing from the common law concerning employment at will intended to and did provide the remedy or relief considered appropriate for the statutory purpose. From the several statutes examined, it seems clear that the legislature has seen fit to provide a cause of action in specific instances relating to matters of public policy, while in other instances violations of such statutes are to be enforced through penalties. It would be judicial legislation to superimpose a further cause of action in tort upon those statutes in which the legislature has shown its intention to provide penalties for violations. In the amendment to the Workmen's Compensation Act, effective in 1975, the legislature did provide that coercive acts with regard to an employee seeking Workmen's Compensation relief were unlawful, but it did not then undertake to provide an action in tort as a part of such relief.

In *Loucks v. Star City Glass Co.* (7th Cir. 1977), 551 F.2d 745, plaintiff made the same claim upon substantially the same arguments. The court affirmed the dismissal of the complaint for failure to state a cause of action where the employment was at will under the Illinois law, the court pointing out "that the words 'terminable at will' mean largely just what they say * * *" (551 F.2d 745, 747), and concluded that the provisions of the compensation statute were "Purely a legislative determination and that, * * * is where, in our opinion, extensions of the principles of compensation over and above those inherent in the construction of the statute, should remain. * * *." 551 F.2d 745, 746.

In the light of the legislative history considered, we conclude that the legislature intended that violations of the Workmen's Compensation Act be enforced by the penalties provided.

The judgment below is reversed.

Reversed.

GREEN, J., concurs.

Mr. PRESIDING JUSTICE CRAVEN, dissenting:

The majority opinion reaches a result contrary to that reached by a different panel of this court in an opinion concurrently filed herewith. (See *Leach v. Lauhoff Grain Co.* (1977), 51 Ill. App. 3d 1022, 366 N.E.2d 1145.) The only difference between the two cases so far as a substantive issue is concerned is that the retaliatory discharge by Motorola was prior to the effective date of section 4(h) of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.4(h)). That provision of the statute now makes the conduct of Motorola, as shown by this record, a criminal offense.

The conduct as shown. was and would continue to be outrageous. The conduct was and continues to be contrary to public policy. Nothing is added by making it a criminal offense. Yet, under the unfortunate, and, I believe, erroneous, view of the majority here, an employer is immune from any common law liability by reason of the exclusive remedy provision of the Act. The employer can, with impunity, chill, if not freeze, the employee's exercise of the limited remedy made available to him by the Act. The employer can say, "If you file a claim, I'll fire you," and the wage earner, dependent upon the income from his job, is very likely deterred from filing the claim. Thus, the employer, under the majority view, gets the best of both worlds. He has no common law liability and there is little likelihood of a claim being filed under workmen's compensation. The employer can deal with the employee and be limited only by his benevolence and malevolence. In this connection, the article found in the Columbia Law Review, as cited in the opinion in *Leach*, is most persuasive. See Blades, *Employment At Will vs. Individual Freedom: On Limiting the Abusive Exercise of Employer Power*, 67 Colum. L. Rev. 1404 (1967).

For the reasons set forth in the opinion in *Leach*, I dissent from the view expressed by the majority. All members of both panels fortunately are in agreement that these two cases should be certified to the Illinois Supreme Court for resolution of our differences.