DANIEL E. LEACH, Plaintiff-Appellant, *v.* LAUHOFF GRAIN COMPANY, Defendant-Appellee.

Fourth District   No. 13873

Opinion filed August 31, 1977.

Manion, Janov & Edgar, Ltd., of Hoopeston (Rick E. Janov, of counsel), for appellant.

Acton, Acton, Meyer & Smith, of Danville (Thomas B. Meyer, of counsel), for appellee.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

Does an employee discharged solely because he files a workmen's compensation claim have a cause of action for such retaliatory discharge?

We hold that he does.

Retaliatory discharge by an employer is contrary to the expressly stated public policy of this State and gives rise to a cause of action in tort for compensatory and punitive damages. The ruling of the circuit court dismissing a complaint and holding there to be no such cause of action is reversed and the case is remanded to the circuit court with directions to deny the motion and for further proceedings.

■■ The first Workmen's Compensation Act was enacted in Illinois in 1911, and reenacted in 1913. It was taken substantially from a like enactment of Great Britain. (See *Chicago Dry Kiln Co. v. Industrial Board* (1916), 276 Ill. 556, 114 N.E. 1009.) The object and purpose of the enactment of the workmen's compensation law in this and other States was to eliminate the common law of liability for personal injuries based upon the negligence of the employer with its attendant and complex defenses of contributory negligence, fellow servant negligence and assumption of the risk. The difficulty of proof and delay in the courts often provided no remedy, subjected the injured employee to deprivation of livelihood, reduced him to proverty, and produced antagonisms between employers and employees to the point that under the police power, something had to be done. That which was done we now refer to as workmen's compensation. That legislation amounted to a tradeoff, liability became absolute, the various defenses disappeared, and the employee could receive compensation for his injuries without reference to fault. The employer had to pay, but the amount he had to pay was not left to the vagary of delayed jury verdicts but for the most part was dependent upon a statutory scheme, and the amount recovered would be less, but recovery would be certain. (See 81 Am. Jur. 2d *Workmen's Compensation* §1 *et seq.* (1976).) As we have indicated, the enactment of workmen's compensation legislation was pursuant to the police power and was done in furtherance of sound public policy. (*Deibeikis v. Link-Belt Co.* (1914), 261 Ill. 454, 104 N.E. 211.) We turn now to the specifics of this case.

On December 2, 1975, plaintiff Daniel E. Leach filed a complaint against defendant Lauhoff Grain Company, his former employer, seeking compensatory and punitive damages. The complaint alleged that plaintiff, an employee at will, was discharged by defendant on November 1, 1975, in retaliation for having filed a workmen's compensation claim against the defendant on October 14, 1975. Plaintiff alleged his firing was due to no reason other than his filing of the claim. Also, he alleged that defendant's conduct in firing him was in violation of section 4(h) of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.4(h)) which makes it "unlawful for any employer * * * to discharge or

threaten to discharge * * * an employee because of the exercise of his rights or remedies granted to him by this Act." The court dismissed the complaint for failure to state a cause of action.

■■ Ordinarily, an employee at will may be terminated by the employer for any cause or no cause at all. However, this principle is not absolute.

■■ Broadly stated, "Public policy is that principle of the law which holds, that no subject or citizen can lawfully do that which has a tendency to be injurious to the public, or against the public good." (*People ex rel. Peabody v. Chicago Gas Trust Co.* (1889), 130 Ill. 268, 294.) It "relates to good morals, natural justice and matters affecting the citizens of the State generally." (*Chicago & E.I.R.R. Co. v. Rouse* (1898), 78 Ill. App. 286, 290.) "The public policy of a State is to be found embodied in its constitution and its statutes. When these are silent upon the subject, then in the decisions of its courts." *People ex rel. Nelson v. Wiersema State Bank* (1935), 361 Ill. 75, 86.

In *Caterpillar Tractor Co. v. Durkin* (1942), 380 Ill. 11, 42 N.E.2d 541, the supreme court held that the preamble of the Unemployment Compensation Act constitutes a declaration of the legislature of the public policy of this State. So too the public policy of Illinois is established by subsection (h) of section 4 of the Workmen's Compensation Act. This section was added to the Act on July 1, 1975. It was clearly the public policy of this State at the time of plaintiff's discharge in November 1975. It is a fair interpretation of that subsection to say that our public policy is the prevention of discharges for an employee's filing of a workmen's compensation claim because such actions subvert the operation of the Act.

We recognize the employer's interest in having freedom to discharge his at will employees, yet we cannot overlook the fact that the effect of the substitution of workmen's compensation for the common law was to eliminate a cause of action by an employee against the employer for work-related injuries. The Act took away from the employee the right to sue in tort in exchange for his right under the Act. To accept defendant's argument here would be to say to the employee, "Although you have no right to a tort action, you have a right to a workmen's compensation claim which, while it may mean less money, is a sure thing. However, if you exercise that right, we will fire you."

The theory of a tort action arising from a wrongful discharge is not new. In *Nees v. Hocks* (1975 Ore.), 536 P.2d 512, an employee's tort action was sustained where she was fired for serving on jury duty against her employer's wishes. Recovery was granted to plaintiffs in *Petermann v. Teamsters Local 396* (1959), 174 Cal. App. 2d 184, 344 P.2d 25, where they were discharged from an employment at will for their failure to give

perjured testimony in their employer's behalf. In *Glenn v. Clearman's Golden Cock Inn, Inc.* (1961), 192 Cal. App. 2d 793, 13 Cal. Rptr. 769, employees at will were discharged for promoting unionism. The court gave recognition to their cause of action for wrongful discharge, holding that the public policy in favor of freedom to unionize overrode the employer's right to discharge employees at will. See cases collected at Annot., 62 A.L.R.3d 271 (1975); Blades, *Employment At Will vs. Individual Freedom: On Limiting the Abusive Exercise of Employer Power,* 67 Colum. L. Rev. 1404 (1967).

Courts in several States have addressed the precise issue before us here. A split of authority has developed. In *Raley v. Darling Shop of Greenville, Inc.* (1950), 216 S.C. 536, 59 S.E.2d 148, plaintiff sued her employer for threatening to fire her if she did not drop a workmen's compensation claim. Allegedly plaintiff was then fired when she refused to withdraw her claim. The South arolina Supreme Court affirmed the dismissal of the complaint because there was no invasion of plaintiff's right to prosecute her workmen's compensation claim. Two Missouri cases have also upheld dismissal of complaints where plaintiffs were employees at will who alleged they were discharged for bringing workmen's compensation claims. (*Christy v. Petrus* (1956), 365 Mo. 1187, 295 S.W.2d 122; *Narens v. Campbell Sixty-Six Express, Inc.* (1961 Mo.), 347 S.W.2d 204.) While we agree with the general proposition that employers may fire employees at will without cause, we cannot ignore the fact that in the business world unscrupulous employers often intimidate employees to keep them from exercising their rights under the Workmen's Compensation Act. An injured employee may well decide to succumb to his employer's ultimatum and drop the workmen's compensation claim if he has a family to feed or poor prospects for employment elsewhere. Thus, we disagree with *Raley, Christy* and *Narens* to the extent that they fail to recognize that the exercise of a legal right, for an ulterior purpose, which serves to frustrate the exercise of the legal right of another while at the same time frustrating the public policy of the State, may be actionable. See *Kelsay v. Motorola, Inc.* (1977), 51 Ill. App. 3d 1016, 366 N.E.2d 1141, for the views of another panel.

In two cases directly on point, courts have recognized tort action for wrongful discharge of an employee in retaliation for his filing of a workmen's compensation claim, a reason which constituted a violation of public policy. (*Frampton v. Central Indiana Gas Co.* (1973), 260 Ind. 249, 297 N.E.2d 425; *Sventko v. Kroger Co.* (1976), 69 Mich. App. 644, 245 N.W.2d 151.) In *Frampton* the Indiana Supreme Court stated:

> "The Act creates a *duty* in the employer to compensate employees for work-related injuries (through insurance) and a *right* in the employee to receive such compensation. But in order

for the goals of the Act to be realized and for public policy to be effectuated, the employee must be able to exercise his right in an unfettered fashion without being subject to reprisal. If employers are permitted to penalize employees for filing workmen's compensation claims, a most important public policy will be undermined." 260 Ind. 249, 251, 297 N.E.2d 425, 427.

■■ We agree with the reasoning in *Frampton* and *Sventko* because of the strong public policy to provide financial and medical benefits to the victims of work-related injuries. This policy clearly outweighs the employer's right to discharge employees at will when the firing is for the ulterior purpose of evading liability under the Act. We do not abrogate the employer's right to discharge employees at will without cause in cases where no clear mandate of public policy is involved. Rather, our holding only recognizes an exception to that right to discharge where, as is alleged here, the firing was in retaliation for the employee's exercise of his rights under the Act.

For purposes of ruling on defendant's motion to dismiss, the trial court was bound to accept plaintiff's allegations as true. Thus, the court was bound to accept plaintiff's allegation that his discharge was motivated solely because he exercised his right to file a claim under the Act. The trial court's granting of the motion to dismiss was error and the judgment of the circuit court of Vermilion County is reversed and the case remanded for proceedings consistent with his opinion.

Two panels of this court consider essentially the same issue and reach different results. This opinion expresses one view, and a majority opinion in *Kelsay* expresses another. Members of both panels are unanimous in their views that the two cases with the conflicting views should be certified to the supreme court for the resolution of the conflict. Accordingly, in both instances, upon the court's own motion, a certificate of importance has been ordered to issue.

Reversed and remanded with directions.

MILLS and REARDON, JJ., concur.