Franklin Donnell **ROBERSON, Jr.,**
Plaintiff-Appellant,

v.

**REBSTOCK DRILLING CO., INC.,**
Defendant-Appellee.

No. 83–3541.

United States Court of Appeals,
Fifth Circuit.

Jan. 10, 1985.

David Band, New Orleans, La., for plaintiff-appellant.

Liskow & Lewis, Deborah Bahn Price, S. Gene Fendler, New Orleans, La., for Rebstock.

Before RUBIN, TATE and HILL, Circuit Judges.

PER CURIAM:

A seaman seeks damages for his alleged wrongful discharge in retaliation for filing suits for personal injury. Our decision is controlled by *Smith v. Atlas Off-Shore Boat Service, Inc.*[1] The hair-line distinction the district court sought to draw between firing someone for filing a personal injury suit and firing him for the allegations of his complaint would render *Smith v. Atlas* meaningless. Because it is clear that the seaman was in fact discharged because he had filed suits and not because he was unable safely to do his work or was a threat to others, we reverse the judgment for the defendnt and remand for findings on damages.

The plaintiff, Franklin Roberson, Jr., suffered an injury to his left ring finger and hand while employed by defendant Rebstock Drilling Co. as a derrickman on a movable offshore oil rig. The injury required treatment, and Roberson was not able to return to work for two months. Roberson and Rebstock agreed to the doctor's suggestion that Roberson return to work as a roughneck, rather than derrickman, because the roughneck work would rebuild and strengthen the muscle tissue in his hand, while a derrickman's work might aggravate his injury or endanger his recovery. Roberson worked four and one-half

1. 653 F.2d 1057 (5th Cir.1981).

months, adequately discharging his duties. Then, on July 24, 1981, he sustained a second and unrelated injury to his left ring finger, requiring treatment. A month later Roberson resumed work as a roughneck, discharging the full duties of this strenuous job.

After Roberson had resumed work, Charles Beckendorf, Rebstock's director of personnel and safety, entered into discussions with Roberson, and later with his counsel, regarding settlement of claims Roberson was informally asserting in connection with the two accidents. Roberson's lost wages amounted to about $4,200, and he was asking for a total of $8,000 to cover the lost wages, pain and suffering, and partial residual disability to his finger.

Unable to obtain this amount from Rebstock, Roberson filed two Jones Act suits against Rebstock in federal court on September 21, 1981. Each complaint contained boilerplate pleading of damages, reciting:

> As a result of the said accident, the plaintiff sustained mental and physical anguish, permanent disability and residual to his finger and/or hand, incurred medical expenses, past, present and/or future, loss of wages, past, present and/or future, diminished earning capacity, and reduced his opportunities in the labor and promotional market, to which extent he estimates his total damages at $500,-000.00.

Neither party has alleged that Roberson was totally disabled, was unable to work as a roughneck, or even that his finger was totally disabled.

When served with the complaints, which Roberson had not previously read, Beckendorf asked Roberson if he stood by their allegations of residual disability to his finger, and Roberson responded affirmatively. Beckendorf then "told him he could not go back to the rig until this issue is resolved, whether or not you can work or not work. You and your attorney say you can't and the doctor said you can. The next thing to do is turn it over to his counsel and our counsel and let them resolve it."

Roberson asked whether he was fired and received no direct answer. However, when he reported for his next hitch, his immediate supervisor told him that he no longer had a job with Rebstock. Roberson later compromised his two injury claims for $18,500, expressly reserving his claim for retaliatory discharge.

Roberson then brought a suit for retaliatory discharge, relying on *Smith v. Atlas*. At trial, Rebstock defended on two theories: (1) Roberson had not been fired, but only disallowed from working so long as he was asserting he had a disability, i.e., so long as he was physically unfit to do the work, and (2) if he was fired, this was justified because he would have been a danger to himself or others on the job. Beckendorf testified that he had not believed Roberson's claim that Roberson had a residual disability, and that several reports by Rebstock's doctors stated that Roberson was fit to return to the roughneck job. Beckendorf affirmed that Roberson had asserted his claims before filing the lawsuits and that Beckendorf had allowed Roberson to work after the injuries were reported and before filing of the suits. Rebstock neither alleged nor offered evidence that after the injuries Roberson's performance as a roughneck was deficient in any respect. However, Beckendorf stated that, once the suits were filed and damages of such high dollar amounts were claimed for Roberson's alleged physical disability, "it was a completely different ball game;" the figures indicated such a high degree of disability that he would be negligent to let the man work.

The district court found that Roberson was in fact fired, despite Rebstock's effort to avoid use of the term, and that this action was precipitated by the filing of the suits. Nevertheless, the trial court held that the firing was not retaliatory because the complaints alleged "significant disability and a substantially higher amount of damages" than the figures of between $5,000 and $8,000 discussed in settlement negotiations. From this increase in demands, the district court concluded, "Beckendorf was justified in accepting these alle-

gations as indicative of a potentially greater degree of disability and a risk of higher exposure in the event of another injury."

The trial court attempted to distinguish the cause of action for retaliatory discharge recognized in *Smith v. Atlas*[2] This holding recognized and applied as part of the general maritime law a principle previously applied by either statute or jurisprudence in other contexts.[3]

*Smith* did not hold that an employer may not discharge an employee who sues him for a little but may do so if the employee sues him for a lot. Nor does the fact that the demands in Roberson's complaints greatly exceed the figures discussed in settlement negotiations make Roberson's suit any different from all other suits protected by *Smith v. Atlas*.

There is no allegation or evidence that Roberson's medical condition was any different during the month before he sued (when he was allowed to work) from his medical condition the day after his complaints were served (when he was fired). The doctors, Beckendorf, and Roberson himself all believed that he was able to do the roughneck job at the time he was fired. Moreover, Roberson was willing to continue working. Although he believed he had a partial residual disability in one finger and had in the past sustained lost wages, pain and suffering, and although his attorney had alleged this in the usual hyperbolic terms, he should not have been discharged for pressing his claims in court. Beckendorf's explanation for firing Roberson was purely pretextual, and the trial court was clearly erroneous in failing to recognize

this.[4] Its finding that Roberson's firing resulted from his filing of the lawsuits established his right of recovery. On remand, the trial court should make findings on the amount of damages sustained as a result of the discharge and enter judgment for the plaintiff accordingly.

The judgment is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

---

**2.** 653 F.2d 1057 (5th Cir.1981). Referring to this court's opinion in *Smith v. Atlas,* the trial court declared: "I may not agree.... In fact I don't, very frankly, agree with some of the statements made here but they certainly are the law of the circuit at this time."

**3.** *E.g.,* 29 U.S.C. § 660(c)(1) (Occupational Safety and Health Act); 33 U.S.C. § 948a (Longshoremen's and Harbor Workers' Compensation Act); L.S.A.–R.S. 23:1361B (Louisiana statute prohibiting discharge because of employee's assertion of claims under Louisiana law, other states' law, *or laws of the United States.*); 29 U.S.C. § 215(a)(3) (Fair Labor Standards Act).

*See also Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978) (Illinois Law); *Leach v. Lauhoff Grain Co.,* 51 Ill.App.3d 1022, 9 Ill.Dec. 634, 366 N.E.2d 1145 (App. 4th Dist.1977); *Frampton v. Central Ind. Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973) (Indiana law); *Sventko v. Kroger Co.,* 69 Mich.App. 644, 245 N.W.2d 151 (1976) (Michigan law); *Brown v. Transcon Lines,* 284 Or. 597, 588 P.2d 1087 (1978) (Oregon law); Note, 6 Suffolk T.L.J. 309 (1982).

**4.** Fed.R.Civ.P. 52(a).